176 P.3d 1132 (2007)
2008-NMCA-017
STATE of New Mexico, Plaintiff-Appellee,
v.
Mark SIMS, Defendant-Appellant.
No. 26,590.
Court of Appeals of New Mexico.
November 14, 2007.
Certiorari Granted January 22, 2008.
Gary K. King, Attorney General, Santa Fe, NM, Ralph E. Trujillo, Assistant Attorney General, Albuquerque, NM, for Appellee.
Albright Law & Consulting, Jennifer R. Albright, Albuquerque, NM, John W. Higgins, Albuquerque, NM, for Appellant.
Certiorari Granted, No. 30,827, January 22, 2008.

OPINION
CASTILLO, Judge.
{1} Defendant appeals his conviction for driving while intoxicated (DWI) under NMSA 1978, § 66-8-102 (2005) (amended 2007). The issue in this case is whether Defendant had actual physical control of his vehicle when he was discovered asleep or passed out at the wheel with the ignition key on the passenger seat. Because the location of the ignition key on the passenger seat would allow the person sitting in the driver's seat to start the automobile and drive away at any time, we hold that the Defendant had actual physical control of the vehicle. Accordingly, we affirm Defendant's conviction.
I. BACKGROUND
{2} Defendant was charged with one count of DWI. The parties stipulated the following facts. The arresting officer found Defendant passed out or asleep behind the wheel of a vehicle, which was parked in a commercial parking lot. The engine was not running, and the officer could see keys in plain view on the passenger seat. The officer discerned a strong odor of alcohol and noticed Defendant's bloodshot, watery eyes and slurred speech. Defendant admitted to having had three drinks, and he performed poorly on field sobriety tests.
{3} The metropolitan court (metro court) ruled that Defendant had actual physical control of the vehicle because he could have easily started and driven the car under the circumstances stipulated by the parties. Defendant then entered a conditional plea of guilty to the DWI charge and reserved his right to appeal the metro court's ruling.
{4} After considering Defendant's appeal, the district court affirmed the judgment of the metro court. The district court essentially agreed with the metro court's assessment: because the ignition key was accessible to Defendant, he was physically capable of starting the car; therefore, Defendant had actual physical control of the vehicle. Defendant appeals the district court's judgment.
*1133 II. DISCUSSION
{5} The statute under which Defendant was charged is Section 66-8-102, which states, "It is unlawful for a person who is under the influence of intoxicating liquor to drive a vehicle within this state." Section 66-8-102(A). Relying on the definition, of "driver" as contained in the Motor Vehicle Code, the New Mexico Supreme court interpreted the term "driver" to include not only those who are actually driving a motor vehicle but also anyone who is in "actual physical control" of the vehicle. NMSA 1978, § 66-1-4.4(K) (1999) (amended 2007); Boone v. State, 105 N.M. 223, 225-26, 731 P.2d 366, 368-69 (1986). The issue of whether Defendant had actual physical control of his vehicle when the ignition key lay on the passenger seat requires an application of law to fact, which we review de novo. See State v. Baca, 2004-NMCA-049, ¶ 11, 135 N.M. 490, 90 P.3d 509.
{6} Defendant makes two arguments to support the theory that he was not in actual physical control of his car. First, Defendant asserts that New Mexico law has required that the key be found in the ignition in order to establish the driver's actual physical control of the vehicle. We disagree.
{7} What constitutes actual physical control has been decided based on the facts of a particular case. See, e.g., State v. Johnson, 2001-NMSC-001, ¶¶ 2-4, 24, 130 N.M. 6, 15 P.3d 1233 (noting that the defendants did not dispute the fact of actual physical control when they were found in the driver's seats of cars parked on private property with keys in the ignition); Boone, 105 N.M. at 226, 731 P.2d at 369 (holding that the car need not be in motion to establish actual physical control); State v. Grace, 1999-NMCA-148, ¶ 13, 128 N.M. 379, 993 P.2d 93 (finding actual physical control where the car was parked on the shoulder, the engine was running, and the defendant-the only occupant-was passed out in the driver's seat); State v. Rivera, 1997-NMCA-102, ¶¶ 2-3, 124 N.M. 211, 947 P.2d 168 (holding that the defendant, who was asleep or unconscious behind the wheel, had actual physical control of the car parked and running in front of his house); State v. Tafoyo, 1997-NMCA-083, ¶¶ 2, 5, 123 N.M. 665, 944 P.2d 894 (stating that the defendant had actual physical control over his inoperable car, which was parked diagonally across a public street). While we agree with Defendant that in each of these cases, the key was in the ignition, we do not agree with Defendant that the absence of the key in the ignition necessarily precludes a finding of actual physical control.
{8} We examine the plain meaning of Section 66-8-102 in the context of the intent of the legislature. Johnson, 2001-NMSC-001, ¶ 6, 130 N.M. 6, 15 P.3d 1233. The "clear purpose" of Section 66-8-102 is to "deter persons from placing themselves in a situation in which they can directly commence operating a vehicle while they are intoxicated." Johnson, 2001-NMSC-001, ¶¶ 1, 19, 130 N.M. 6, 15 P.3d 1233.
{9} In our case, the ignition key was on the passenger seat next to Defendant, who was asleep or passed out in the driver's seat. Under settled law, Defendant had actual physical control if he could exercise direct influence over the vehicle. Id. ¶ 19. There is no evidence regarding how Defendant's vehicle came to be in the commercial parking lot. The only issue before us relates to Defendant's ability to drive away from that lot. Based on the facts of this case, there was nothing to prevent Defendant from awakening, reaching for the keys, and driving from the parking lot. The policy behind Section 66-8-102, as stated in Johnson, is to prevent this type of risk to the public because intoxicated persons are "unable to exercise the clear judgment and steady hand necessary to handle a vehicle with safety both to themselves and the public." 2001-NMSC-001, ¶ 17, 130 N.M. 6, 15 P.3d 1233 (internal quotation marks and citation omitted).
{10} Second, Defendant contends that the location of the ignition key in the passenger seat indicated that Defendant decided not to drive the vehicle and that a determination of actual physical control would thus be contrary to the legislative intent of Section 66-8-102. Again, we disagree. Our Supreme Court, in Johnson, explained that "[p]ublic safety is best advanced by deterring impaired persons from driving or placing themselves in a position of actual physical control of their vehicles in the first instance[,] since *1134 such control frequently leads to movement of the vehicle." 2001-NMSC-001, ¶ 22, 130 N.M. 6, 15 P.3d 1233. In State v. Harrison, the defendant was intoxicated, and his friend offered to take him home. 115 N.M. 73, 74, 846 P.2d 1082, 1083 (Ct.App.1992). On the way, the vehicle broke down. Id. The defendant's friend left him in the front passenger seat of the vehicle and went to get help. Id. at 74-75, 846 P.2d at 1083-84. Before leaving, however, the friend, in an attempt to prevent the defendant from driving the vehicle, placed the ignition key under the seat and put bricks in front of the vehicle's tires. Id. at 74, 846 P.2d at 1083. In spite of these efforts, the defendant, upon awakening, located the keys, started the engine, engaged the transmission, put his hands on the wheel, and passed out before he could drive away. Id. at 75, 846 P.2d at 1084. Although the defendant in Harrison was found with the engine running, while Defendant in our case had not started the engine when the police discovered him, the risks are similar. Accordingly, we conclude that the legislative intent behind Section 66-8-102 is best served by deterring an intoxicated person from putting himself behind the wheel of a car when he has immediate access to the ignition key of the vehicle.
{11} We now address the dissent. Although we have concerns with conduct of this nature rising to the level of DWI, we cannot agree with the reasoning of the dissent. Once our Supreme Court decided that the test is actual physical control and that the test is satisfied by a person passed out in the driver's seat with the key in the ignition, then it seems to us that establishing a dividing line at that point or millimeters away is not supported by any coherent rationale, other than a desire to draw a line somewhere. The dissent supports its line by hypothetical situations of persons asleep in the backseat or outside the car. According to the dissent's line, a fully conscious person with the key in his hand just a few feet from the ignition and about to start the car would fall outside the Johnson rule, as would Defendant in this case, with the keys on the seat beside him. The test cannot be one of consciousness, since the defendants in cases Johnson relied on were passed out. See Johnson, 2001-NMSC-001, ¶ 19, 130 N.M. 6, 15 P.3d 1233. We do not believe that what the dissent proposes is what our Supreme Court intended in Johnson, and we believe that our opinion is faithful to the logic and rationale of Johnson.
{12} We now turn to our concern with Johnson. Were we to analyze this case on a clean slate, we would reverse based on the reasoning set forth in our opinion in. State v. Wenger, 1999-NMCA-092, 127 N.M. 625, 985 P.2d 1205, rev'd, Johnson, 2001-NMSC-001, ¶ 24, 130 N.M. 6, 15 P.3d 1233 and in the dissent written by Justice Minzner in Johnson. 2001-NMSC-001, ¶¶ 26-37. As stated by Justice Minzner, the analysis in Wenger reconciles "almost all of what has been written by an appellate court in this state on the issues the appeal raises" and also gives "some meaning to all of the language in the relevant statutes." Id. ¶ 26. With this in mind, we urge our Supreme Court to take another look at what constitutes driving while intoxicated.
III. CONCLUSION
{13} We agree with the district court's holding that Defendant had actual physical control of the vehicle in these circumstances. Defendant's conviction is affirmed.
{14} IT IS SO ORDERED.
I CONCUR: LYNN PICKARD, Judge.
JONATHAN B. SUTIN, Chief Judge (dissenting).
SUTIN, Chief Judge (dissenting).
{15} I respectfully dissent. I respectfully suggest that the Supreme Court take another look at State v. Johnson, 2001-NMSC-001, 130 N.M. 6, 15 P.3d 1233. At this point, at the very least, based on the language the Legislature placed in the DWI statutes, Johnson should not be applied to permit conviction of Defendant in the present case. Broadening Johnson's reach should be accomplished, if at all, through amended legislation.
{16} A "`driver'" is a "person who drives" or is "in actual physical control of a motor vehicle." NMSA 1978, § 66-1-4.4(K) (1999) (amended 2007); Johnson, 2001-NMSC-001, *1135 ¶¶ 11, 130 N.M. 6, 15 P.3d 1233. Johnson addressed two circumstances in which vehicles were on private property. In one, the driver was sitting in the driver's seat with the key in the ignition and the engine running. Id. ¶ 3. In the other, the defendant was also seated in the driver's seat with the key in the ignition, but the engine was not running. Id. ¶ 2. Johnson held that the driver in each circumstance was properly convicted of DWI, stating that "the State may charge a person who is in actual physical control of a non-moving vehicle with DWI despite the fact that he or she is on private property." Id. ¶¶ 1, 24.
{17} In support of its determination that a violation of the DWI statute can occur on private property, as well as public property, our Supreme Court in Johnson stated that the purpose of the words "`actual physical control'" is "to deter persons from placing themselves in a situation in which they can directly commence operating a vehicle while they are intoxicated, regardless of the location of the vehicle." Id. ¶ 19. The Court reinstated the charges of DWI based on that deterrence policy and on the further determination that a person in actual physical control of a vehicle is a danger to society because of the potential that the person could drive the vehicle. See id. ¶¶ 17, 19, 24.
{18} The Johnson Court defined the statutory words, "`actual physical control,'" by a driver to mean a person who "exercises direct influence over the vehicle." Id. ¶ 19. The Court did not define what "exercises direct influence" means. "Direct," among other things, means "proceeding from one point to another in time or space without deviation or interruption," and "proceeding by the shortest way." Webster's New Collegiate Dictionary 323 (1975); see Webster's II New College Dictionary 321 (1995) (defining "direct" to mean "[t]o take authoritative charge of"). "Influence" means "the act or power of producing an effect without apparent exertion of force or direct exercise of command." Webster's New Collegiate Dictionary 592; see Webster's II New College Dictionary 569 (1995) (defining "influence" as "[a] power indirectly or intangibly affecting a person or event"). I question whether the reader's understanding of "actual physical control" is enhanced by the definition "exercises direct influence." Ambiguity sets in, given that "direct" seems to connote producing an effect with "exertion of force or direct exercise of command," while "influence" connotes the opposite.
{19} The driver in Johnson who was sitting in the driver's seat with the key in the ignition and engine running can arguably be characterized as a person who was in actual physical control of the vehicle, despite the fact that the vehicle was not moving at the time. That driver could have directly and immediately driven the vehicle. The driver who was sitting in the driver's seat with the key in the ignition but without the engine running could also arguably be characterized as a person who was in actual physical control of the vehicle. That driver could directly and immediately, with the key already in place, have turned the engine on and have driven the vehicle. I interpret the Johnson Court's definition of a person who "exercises direct influence" to mean a person who is in a position to get the vehicle running and moving almost instantly. If that is not how "exercises direct influence" is to be defined, then that is how it should be defined. Still, even with this more appropriate. Way of looking at "actual physical control," it does not answer the question of where to stop incremental broadening of the language in the DWI statute.
{20} While Johnson's general policy statements can, arguably, support the conclusion that Defendant in the present case is properly charged with DWI, I think Johnson's application should be limited. At this point, any extension beyond circumstances where a person is in a position, directly and immediately, to get the vehicle running and moving, should be the subject of legislation, not judicial extension.
{21} Courts are often loathe to discuss hypotheticals. We handle cases on their peculiar and particular facts, governed by fairly broad legal principles. But here, the present case, with Johnson as its "precedent," appears to me to create nigh onto a circumstance akin to strict liability for any intoxicated person who is in a position, within a reasonably short space and time, to put the key in the ignition of a vehicle. I see little *1136 difference between Defendant's circumstance and that of a person who is asleep in the backseat of a vehicle with the key in his or her pocket. I see little difference between Defendant and a person outside the vehicle with the key in his or her pocket, even if the person is sitting in another's vehicle close by, is passed out on the ground next to his or her own vehicle, or has just left a restaurant or private home and is heading for a vehicle with the key in his or her pocket or hand. I see little difference between Defendant and an intoxicated person who remains in a vehicle and is given possession of the key while his or her spouse, who' was driving the vehicle, is required to walk a block to get gas because their vehicle has run out of gas.
{22} Johnson's policy statements relating to deterrence and danger are based on potentiality, not actuality. There are a myriad of circumstances in which an intoxicated person is potentially able, to use Johnson's language, to "exercise direct influence" over a vehicle such that the person can get the vehicle running and moving. I tend to doubt that the Legislature had in mind convictions under all of' the circumstances. We should not overlook the fact that the Legislature used the words "actual physical control." The word "actual" means "existing in act and not merely potentially." Webster's New Collegiate Dictionary 12 (1975); see Webster's II New College Dictionary 12 (1995) (defining "actual" as "[e]xisting in fact or reality" and "[e]xisting or acting at the present moment"). One source sets out "existent-contrasted with potential and possible" as a synonymous cross-reference to "actual." Webster's Third New International Dictionary 22 (1976). "Actual" arguably covers sitting in the driver's seat with the key in the ignition. But I have difficulty seeing how it covers passed out or asleep in the front seat with the key on the passenger's seat, or how it covers sitting, passed out, or asleep in the passenger's seat. Almost anything but a person in the driver's seat with the key in the ignition or in the process of placing the key in the ignition is a potential, not actual, act of "physical control."
{23} Without legislative amendment to the DWI statute, we should not extend criminal liability to the facts in the present case. Where the vehicle is on private property, and no evidence is presented sufficient to prove that the person charged was driving the vehicle while intoxicated, criminal liability under the present DWI statute should be limited to instances in which the defendant is in a position, directly and immediately, to instantly get the vehicle running and moving. If criminal liability is to be extended beyond those circumstances, I think the Legislature ought to have the first crack at broadening the coverage of the crime.