## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2010-NMSC-036

Filing Date:  June 25, 2010

Docket No. 31,092

STATE OF NEW MEXICO,

      Plaintiff-Respondent,

v.

DAVID MAILMAN,

      Defendant-Petitioner.

ORIGINAL PROCEEDING ON CERTIORARI
John A. Dean, Jr., District Judge

Hugh W. Dangler, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Vicki W. Zelle, Assistant Appellate Defender
Corey J. Thompson, Assistant Appellate Defender
Santa Fe, NM

for Petitioner

Gary K. King, Attorney General
Margaret E. McLean, Assistant Attorney General
Ralph E. Trujillo, Assistant Attorney General
Santa Fe, NM

for Respondent

## OPINION

**BOSSON, Justice.**

{1}     A jury convicted Defendant David Mailman by a general verdict of driving while intoxicated (DWI) based on alternative theories of actually driving while intoxicated or being in actual physical control of a vehicle while intoxicated. Defendant appeals, arguing that his conviction must be reversed because his vehicle was inoperable and, therefore, he was not in actual physical control of it, and because there was insufficient evidence to

convict him of actually driving while intoxicated. We hold that Defendant's conviction, to the extent it may have been based on actual physical control, must be overturned in light of our recent decision in *State v. Sims*, 2010-NMSC-027. We also apply *Sims* and conclude that the operability of a vehicle is a factor to be considered by the jury in determining whether a defendant has the general intent to drive so as to endanger any person. The Court of Appeals having affirmed Defendant's conviction, we reverse and remand for a new trial.

**BACKGROUND**

**{2}**      Defendant was arrested for DWI and charged pursuant to NMSA 1978, Section 66-8-102 (2005), with a fourth or subsequent offense. At trial, Officer Dwayne Favarino testified that on the night of December 9, 2006, he was patrolling Highway 64 in San Juan County when he stopped to check on the Hogback Mustang, a convenience store that had experienced a recent robbery. As Officer Favarino entered the parking lot, he observed a Jeep Cherokee parked off by itself in the dark with its door open. As he neared the vehicle to investigate, he saw the occupant close the door. Officer Favarino parked his cruiser, got out, and knocked on the driver's window. Defendant looked up at him from the driver's seat with a "blank stare" and then looked away, attempting to place a call from his cell phone. Officer Favarino knocked again, and receiving no response, opened the car door to speak with Defendant.

**{3}**      Officer Favarino immediately observed an open can of beer on the center console and thought that Defendant appeared "confused and disoriented." The officer asked Defendant to step out of his vehicle, and he complied, though he had difficulty maintaining his balance and smelled strongly of alcohol.

**{4}**      Officer Favarino asked if Defendant had been drinking. Defendant replied that he had consumed a six-pack of beer and that he had thrown the other cans out of the car window. After looking around the car for the empty cans, Officer Favarino asked Defendant where they were. Defendant replied that he had thrown the cans out of the window along the highway as he drove to the convenience store.

**{5}**      Defendant then told Officer Favarino that his vehicle had broken down and asked if the officer would arrange for a tow truck. Officer Favarino asked where Defendant's keys were, and Defendant replied that he had dropped them under the seat. Officer Favarino briefly searched for the keys but could not find them. However, he recognized Defendant's vehicle as an older type that can sometimes be started without a key. Officer Favarino tried to start the vehicle without the key and discovered that he was able to turn the ignition, but the engine did not "turn over" when he did so, leading him to believe that the vehicle "had a dead battery or something." Prior to being placed under arrest, Defendant belligerently refused to perform field sobriety tests. He later refused to provide a breath sample, admitting that he was too drunk to pass the test.

**{6}**      In its closing, the State argued to the jury that Defendant was guilty of DWI based on either of two theories: (1) actually driving a vehicle while impaired to the slightest

2

degree, based partially on Defendant's own admissions, or (2) being in actual physical control of a vehicle while impaired to the slightest degree. After a short deliberation, the jury returned a general verdict of guilty without being asked to specify which theory formed the basis for its verdict. The Court of Appeals affirmed Defendant's conviction in a memorandum opinion. *State v. Mailman*, No. 27,966, slip op. (N.M. Ct. App. Apr. 9, 2008). We granted certiorari, 2008-NMCERT-005, 144 N.M. 331, 187 P.3d 677, and consolidated oral arguments in this case with *Sims*, 2010-NMSC-027, because both cases raised questions regarding the interpretation of the actual physical control aspect of our DWI law.

## DISCUSSION

### Defendant's Conviction Must Be Reversed in Light of *Sims*

**{7}** Section 66-8-102(A) provides, "[i]t is unlawful for a person who is under the influence of intoxicating liquor to drive a vehicle within this state." As we recently explained in *Sims*, we have interpreted the word "drive" to mean either "driving a motor vehicle," or being "in actual physical control whether or not the vehicle is moving." *Sims*, 2010-NMSC-027 at 9-10; *accord* UJI 14-4511 NMRA (also defining "drive" as "exercising control over or steering a vehicle being towed by a motor vehicle; or operating an off-highway motor vehicle; or in actual physical control of an off-highway motor vehicle whether or not the vehicle is moving" (brackets omitted)).

**{8}** In *Sims*, we clarified that actual physical control requires not only control over the vehicle, but also a general intent to drive so as to endanger any person. *Sims*, 2010-NMSC-027 at 20-21. We reasoned that the Legislature intended the DWI laws to apply only to intoxicated individuals who pose an actual, not hypothetical, danger to themselves or the public. *Id.* at 19-21. After *Sims*, "a fact finder cannot simply assume or speculate that the individual in question might sometime in the future commence driving his or her vehicle." *Id.* at 4. Instead, because actual physical control allows for a DWI conviction without motion of a vehicle—without actual *driving*—we held that proving a general intent to drive is necessary to demonstrate that an accused poses a real danger. *Id.* at 19-21. We thus overturned Sims's DWI conviction, because the State had failed to prove his intent to drive so as to endanger himself or the public. *See id.* at 4.

**{9}** We did not address in *Sims* how our holding was to apply to other cases. We take this opportunity to clarify that our holding in *Sims* applies prospectively to all cases pending in the trial court and on direct appeal as of the date that *Sims* was filed, June 8, 2010. *See State v. Frawley*, 2007-NMSC-057, ¶ 34, 143 N.M. 7, 172 P.3d 144 ("[A] new rule . . . 'generally applies only to cases that are still on direct review.'" (quoting *Whorton v. Bockting*, 549 U.S. 406, 416 (2007)). Because this case was pending at that time, *Sims* applies here.

**{10}** In applying *Sims* to this case, we note the real possibility that the jury may have convicted Defendant based on the actual physical control of his vehicle *without* a general intent to drive so as to endanger himself or the public. The jury was instructed that it could convict Defendant of DWI if it found that he *either* was "driving the motor vehicle" *or* "in

3

actual physical control whether or not the vehicle [was] moving." UJI 14-4511. No definition of actual physical control was provided. The jury returned a general verdict of guilty without indicating whether it was based on a finding of driving or actual physical control.

**{11}** In *State v. Olguin*, 120 N.M. 740, 741, 906 P.2d 731, 732 (1995), we held that "due process does not require a guilty verdict to be set aside if an alternative basis of conviction is only factually inadequate to support a conviction." However, "a conviction under a general verdict must be reversed if one of the alternative bases of conviction is legally inadequate." *Id.*; *see also State v. Olguin*, 118 N.M. 91, 98, 879 P.2d 92, 99 (Ct. App. 1994) ("Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law—whether, for example, the action in question is protected by the Constitution, is time barred, *or fails to come within the statutory definition of the crime*." (quoting *Griffin v. United States*, 502 U.S. 46 (1991)) (emphasis added)), *aff'd in part and set aside in part,* 120 N.M. 740, 906 P.2d 731 (1995). A conviction in the latter situation violates due process because a jury cannot be expected to reach the correct result when they "'have been left the option of relying upon a legally inadequate theory.'" *Olguin*, 118 N.M. at 98, 879 P.2d at 99 (quoting *Griffin*, 502 U.S. at 59).

**{12}** Thus, a conviction under a general verdict must be reversed where it is based on more than one legal theory and at least one of those theories is legally, as opposed to factually, invalid. Here, because the jury might have convicted Defendant of DWI based on a theory of actual physical control *without* a general intent to drive so as to endanger himself or the public, his conviction must be reversed in light of our holding in *Sims*.

**Actual Physical Control of an Inoperable Vehicle**

**{13}** Defendant argues that because his vehicle was inoperable when Officer Favarino apprehended him in the parking lot, he was not in actual physical control. If we were to hold otherwise, Defendant contends that "mere access to a *disabled and inoperable* vehicle, without any analysis of the surrounding circumstances, would subject a person to a DWI prosecution."

**{14}** The State counters that *State v. Tafoya*, 1997-NMCA-083, 123 N.M. 665, 944 P.2d 894, forecloses Defendant's argument. In *Tafoya*, a police officer discovered the defendant asleep at the wheel of his car which had broken down in the middle of a major thoroughfare. *Id.* ¶ 2. The defendant was convicted, and on appeal he argued that he could not be in actual physical control of his vehicle because it was inoperable. *Id.* ¶ 3. Our Court of Appeals rejected that argument, holding that "where Defendant was driving and his vehicle stopped, he is still in control of the vehicle." *Id.* ¶ 5.

**{15}** We agree that if we were to follow *Tafoya*, Defendant's argument would likely fail. However, because the parties briefed and argued this case before we decided *Sims,* we must determine whether *Tafoya*'s reasoning retains any force in light of *Sims*. Clearly, it does not. *Tafoya* did not address whether the defendant was actually exercising control over the

4

vehicle with a general intent to drive so as to endanger anyone. *See Sims*, 2010-NMSC-027 at 3. Thus, because *Sims* renders the analysis in *Tafoya* obsolete, we will take a fresh look at the issue presented in this case.

**{16}** The State argues that the operability of a vehicle should be irrelevant to determining whether an individual is in actual physical control, based on the facts of *State v. Harrison*, 115 N.M. 73, 846 P.2d 1082 (Ct. App. 1992), *cert. denied*, 114 N.M. 720, 845 P.2d 814 (1993). There, the defendant's friend offered to drive the intoxicated defendant home, but the vehicle stalled while they were en route, and the friend was unable to start it again. *Id.* He pulled the car off the road, hid the keys under the seat, and placed bricks under the front and back tires of the vehicle. *Id.* He left the defendant in the car and went in search of help. *Id.* at 75, 846 P.2d at 1084. Some time later, a police officer found the defendant in the same location, passed out behind the wheel of the car with the key in the ignition and the vehicle running, the transmission in drive, and the defendant's foot on the brake. *Id.* The court held that it could "reasonably be inferred that [the] [d]efendant actively searched for the vehicle keys, started the engine, and was prepared to drive away before he passed out or fell asleep. In other words, Defendant's efforts were evidence of his exercise of actual physical control over the vehicle." *Id.* at 76, 846 P.2d at 1085.

**{17}** The State argues that, as was the defendant in *Harrison*, Defendant might have been able to get his vehicle started again and embark upon "an inebriated journey without the ability, either mentally, physically, or both, to exercise the clear judgment and steady hand necessary to handle the vehicle with safety." As a result, the State contends that the operability of a vehicle should not be necessary for a DWI conviction based on actual physical control, presumably because of the possibility that a vehicle may be inoperable one moment and operable the next.

**{18}** We acknowledge that the operability of a vehicle may be difficult to determine in some cases, but the State's argument simply goes too far. Taken to its logical end, the State could charge an individual with DWI for being in actual physical control of a vehicle without wheels or without a transmission. We do not believe that the Legislature intended such an absurd result.

**{19}** Instead, we agree with Defendant that the operability of a vehicle is relevant to the actual physical control inquiry. However, we are not convinced that the inoperability of a vehicle automatically forecloses the possibility of a DWI conviction based on actual physical control. It is up to the jury to determine, under the standard that we articulated in *Sims*, whether an accused lacked the general intent to drive so as to endanger any person, based on the overt acts taken by the accused. While the operability of the vehicle may be highly relevant to that determination, it is not necessarily dispositive.

**{20}** We leave it to the jury to weigh evidence of vehicle inoperability along with other evidence in deciding questions of control and intent when determining whether an accused is in actual physical control of a vehicle. We hold that the operability of a vehicle is an additional factor to be considered by the jury in determining whether a defendant has the

5

general intent to drive so as to endanger any person. *See Sims*, 2010-NMSC-027 at 27-28 (listing factors for the jury to consider in determining whether a defendant is in actual physical control and has a general intent to drive so as to endanger any person). This approach is consistent with our holding in *Sims*, and we believe that it will allow for a logical enforcement of our DWI laws without extending them beyond their reasonable limits.

**{21}** Applied to this case, the only evidence presented at trial demonstrated that when Defendant was apprehended, he was in a non-moving, inoperable vehicle attempting to make a phone call. Defendant informed Officer Favarino that his car had broken down and asked the officer to arrange to have it towed. This evidence is insufficient as a matter of law to demonstrate that Defendant had taken an overt step toward driving with a general intent to drive so as to endanger himself or the public. *See id.* at 22 (holding that a conviction based on actual physical control requires proof of "an overt act sufficient to establish actual physical control of the vehicle along with the general intent to drive"). As in *Sims*, "[i]t was pure speculation whether [the] [d]efendant would . . . drive the vehicle." *Id.* at 3. Defendant was not in actual physical control of his vehicle.

**Prosecution of DWI Based on an Inference of Past Driving**

**{22}** Defendant also argues that the State did not present sufficient evidence to infer that Defendant drove while intoxicated. Specifically, Defendant argues that the State did not provide any evidence that Defendant was the driver of the vehicle or that Defendant was intoxicated before his vehicle broke down in the parking lot of the convenience store.

**{23}** We do not agree with Defendant that there was insufficient evidence for the jury to find that he drove while impaired to the slightest degree. While the State did not introduce any direct evidence that Defendant drove while intoxicated, it presented adequate circumstantial evidence to lead a reasonable juror to convict Defendant of DWI. *See* UJI 14-4501 NMRA (requiring jury to find that the defendant "operated a motor vehicle" and that "[a]t the time, the defendant was under the influence of intoxicating liquor, that is, as a result of drinking liquor the defendant was less able to the slightest degree, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to the person and the public").

**{24}** "'[S]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (quoting *State v. Baca*, 1997-NMSC-059, ¶ 14, 124 N.M. 333, 950 P.2d 776). The State submitted ample evidence to lead a reasonable juror to conclude that Defendant drove while intoxicated. Defendant's admissions alone were sufficient for the jury to infer his guilt. He admitted that he had consumed five cans of a six-pack of beer and thrown them out of the window along the highway as he drove to the convenience store. He also refused to take the field sobriety tests and the breath test, admitting that he was too drunk to pass. Additionally, he had an open can of beer on the center console of his vehicle when he was apprehended, and he was disoriented and confused, had bloodshot, watery eyes, and had difficulty maintaining his balance. Substantial evidence supported Defendant's

conviction for past DWI.

**{25}** We note that prior decisions of this Court and the Court of Appeals have created confusion by using actual physical control as an evidentiary tool for proving DWI based on both (1) past DWI when the accused is apprehended in a vehicle that is no longer in motion, and (2) the threat of future DWI, thereby conflating the two. *Compare Boone v. State*, 105 N.M. 223, 225, 731 P.2d 366, 368 (1986), *and Tafoya*, 1997-NMCA-083, ¶ 5, *with State v. Johnson*, 2001-NMSC-001, ¶ 19, 130 N.M. 6, 15 P.3d 1233 (filed in 2000) *and State v. Sims*, 2008-NMCA-017, ¶ 9, 143 N.M. 400, 176 P.3d 1132, *rev'd* 2010-NMSC-027 at 33. We recently clarified in *Sims* that actual physical control remains a viable foundation for a DWI conviction when coupled with proof of an overt act and a general intent to drive so as to endanger any person. However, *Sims* did not address whether evidence of past DWI is a valid basis for proving actual physical control.

**{26}** Even more recently, we held in *City of Santa Fe v. Martinez*, No. 31,785, slip op. at 11-14 (N.M. Sup. Ct. June 24, 2010), that the misdemeanor arrest rule no longer applies to DWI arrests. With this impediment to arrest and prosecution for past DWI eliminated, we no longer need to rely on actual physical control as a proxy for past driving. *See Sims*, 2010-NMSC-027 at 11 (explaining that *Boone* adopted actual physical control as an alternative definition of "drives" in our DWI statute because of "a disinclination to alter the common law rule prohibiting warrantless misdemeanor arrests when the misdemeanor does not occur in the presence of the arresting officer").

**{27}** In this case, the prosecutor relied on actual physical control only insofar as it implicated Defendant's potential to drive while intoxicated in the future. Regarding Defendant's past driving, the prosecutor correctly recognized that he had sufficient evidence to allow the jury to infer that Defendant actually drove while intoxicated before Officer Favarino arrived. This approach is consistent with *Sims*, where we explained,

> [h]ad the police officer or other witnesses observed Defendant behind the steering wheel of a moving vehicle at or near the time of his apprehension, the State would not have to rely on "actual physical control" to prove that Defendant was DWI. It is only when there are no witnesses to the vehicle's motion that actual physical control is essential to prove DWI at the time an accused is apprehended.

*Id.* at 2-3.

**{28}** The facts of this case compel us to take our recent holding in *Sims* one step further. Actual physical control is not necessary to prove DWI unless there are no witnesses to the vehicle's motion *and insufficient circumstantial evidence to infer that the accused actually drove while intoxicated.* Such evidence may include the accused's own admissions, the location of the vehicle next to the highway, or any other similar evidence that tends to prove that the accused drove while intoxicated. Accordingly, although we reverse Defendant's conviction on due process grounds and hold that he was not in actual physical control of his

7

vehicle as a matter of law, we remand this case for a new trial based solely on whether Defendant actually drove while intoxicated.

**CONCLUSION**

**{29}** We reverse the Court of Appeals and remand to the district court for a new trial consistent with this Opinion.

**{30}    IT IS SO ORDERED**.

_____
                                          **RICHARD C. BOSSON, Justice**

**WE CONCUR:**

_____
**CHARLES W. DANIELS, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

**Topic Index for _State v. Mailman_, Docket No. 31,549**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-SB | Substantial or Sufficient Evidence |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-DP | Due Process |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-DG | Driving While Intoxicated |