This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                     **NO. 32,353**

**RUDY NORBERTO,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John A. Dean, Jr., District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Sergio Viscoli, Assistant Appellate Defender
B. Douglas Wood III, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**VANZI, Judge.**

{1}     This case is before us on remand from our Supreme Court to consider issues raised by Defendant but not decided in our initial opinion. *See State v. Charlie*, 2014 WL 7187049, Nos. 34,487 & 34,488, order (N.M. Sup. Ct. Dec. 18, 2014) (non-precedential). We affirm.

**BACKGROUND**

{2}     Because the parties are familiar with the procedural and factual background and because this is a memorandum opinion, we do not provide a detailed summary of this case. We highlight pertinent facts and procedure in connection with the issues analyzed.

{3}     Defendant raises two issues that were not decided in our previous opinion, arguing that: (1) evidence obtained during the period in which he was removed from the Navajo Nation should be suppressed, and (2) there was insufficient evidence that Defendant drove outside the Navajo Nation. We take each issue in turn.

**DISCUSSION**

**Suppression of the Evidence**

{4}     Defendant contends that any evidence obtained during the period in which he was removed from the Navajo Nation should be suppressed. The crux of Defendant's argument is that, even if Officer Schake had authority as a cross-commissioned officer to arrest Defendant, he nevertheless exceeded the scope of that authority when he transported Defendant off the Navajo Nation without first following proper extradition

procedures. Therefore, any statements and evidence that Officer Schake obtained after he transported Defendant off the Navajo Reservation are subject to suppression. We are not persuaded.

**{5}** In essence, Defendant's argument is merely an extension of his jurisdictional claim, which our Supreme Court has already addressed. In its dispositional order of reversal, the Court concluded that because Defendant was never released into the custody of another jurisdiction, extradition was not implicated in this case and, therefore, extradition protocols did not need to be followed. *Id.* ¶ 12. Instead, the Court held that, at the time of Defendant's arrest and transport, Officer Schake was properly acting pursuant to his role as an enforcer and investigator of Navajo law. *Id.* ¶ 13. Because there was no need to follow Navajo extradition procedures, Defendant's argument that he was "illegally removed" from the Navajo Nation on that basis must fail. Accordingly, he is not entitled to suppression of the evidence.

**Sufficiency of the Evidence**

**{6}** Defendant contends that there was insufficient evidence to support the jury's finding that he committed the crimes with which he was charged outside the Navajo Nation. "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.

3

{7}    In order to convict Defendant of the crimes of DWI, open container of alcohol in a motor vehicle, no insurance, and failure to maintain a lane, the jury was required to find, among other elements, the following: "This happened in New Mexico, on non-Reservation Land, on or about the 21st day of September, 2009." Defendant maintains that "[t]he State specifically failed to provide sufficient evidence to prove that [Defendant] operated the vehicle on New Mexico state roads." In addition, he argues that the only evidence in support of the above element was his statement to Officer Schake and that an "extrajudicial statement without other corroborating evidence cannot substantiate the corpus delecti of a crime."

{8}    We disagree. As an initial matter, we note that direct evidence is not required to support a conviction for past DWI; circumstantial evidence may properly be relied upon in this context. *See State v. Mailman*, 2010-NMSC-036, ¶¶ 23-28, 148 N.M. 702, 242 P.3d 269. We further note that, while an admission standing alone may not be sufficient to sustain a conviction, "an extrajudicial statement may be used to establish the corpus delecti where the statement is shown to be trustworthy and where there is some independent evidence to confirm" the admission. *State v. Weisser*, 2007-NMCA-015, ¶ 18, 141 N.M. 93, 150 P.3d 1043. "In determining the trustworthiness of [a d]efendant's extrajudicial statement, we look not at the circumstances surrounding the statement, but instead at the actual content of the statement and evidence that

4

corroborates the information contained in the statement." *State v. Owelicio*, 2011-NMCA-091, ¶ 27, 150 N.M. 528, 263 P.3d 305.

{9}     Here, the State presented a good deal of compelling circumstantial evidence that the crimes took place in New Mexico. Testimony at trial established that Jason Yazzie was at a park on the south end of Farmington in the late afternoon of September 21, 2009. While at the park, Mr. Yazzie noticed that the person parked next to him was drinking a can of Old English malt liquor and that he appeared to be inebriated. Mr. Yazzie sat in his car for about half an hour during which time he saw the man throw the can out of his window. When the man saw Mr. Yazzie, he got out of his car, was unstable, and stumbled as he walked. Mr. Yazzie called San Juan County dispatch and told them that a man in a grey sedan was in the park drinking and asked them to send someone to make sure he was okay. The man drove off while Mr. Yazzie was on the phone with dispatch. While still on the phone, Mr. Yazzie followed the man who first drove south over Miller Bridge and then turned onto Murray Drive, where he proceeded west. Mr. Yazzie testified that he was pretty sure he provided dispatch with a description of the car and its license plate number. He further testified that he saw the car weave back and forth into the center lane. Mr. Yazzie continued to follow the car that made a west turn onto State Road 371 and then made a right turn on Navajo Route 36, at which time a patrol car got behind the car and turned its lights on. Mr. Yazzie drove by the car he had been following, which was now stopped, twice, and

when he drove by the second time, he saw alcoholic beverages, cans, and a clear bottle on top of the car. Although Mr. Yazzie testified that he did not remember the face of the driver and could not identify Defendant, he recalled being interviewed by an officer on the phone about the events he had witnessed.

{10}    Officer Schake testified that, on September 21, 2009, while he was on duty as a patrolman in Farmington, he received an attempt to locate dispatch from the San Juan County dispatch operator for a possible drunk driver. Dispatch told Officer Schake that the driver was driving westbound on State Road 371 and that he turned and was driving onto the Navajo Reservation. Officer Schake got onto Navajo Route 36 on the Navajo Nation and drove east in order to intercept Defendant's vehicle. The officer came across the vehicle driving west and saw it cross over the center line one tire width into the lane he was traveling in. Officer Schake made a u-turn and saw the vehicle travel from the left to the right, crossing over the right line by one tire width. He then saw the vehicle travel down the center of two lanes with half the vehicle in the left lane and half in the right lane. The vehicle description and license plate number matched the information provided by the dispatch operator.

{11}    Officer Schake initiated a traffic stop, and when he approached the driver's side of the vehicle, he observed a bottle of vodka on the floorboard with the contents partially removed. The driver, who identified himself as Rudy Norberto, appeared disoriented, had a blank stare, bloodshot and watery eyes, and had slurred speech.

6

Officer Schake began a drunk driving investigation and asked Defendant to get out of the vehicle to perform field sobriety tests. When he got out of the car, Defendant had trouble standing and swayed from side to side as he walked to the back of the vehicle. He smelled of alcohol and admitted to drinking five shots of vodka. Defendant told Officer Schake that he had obtained the alcohol at the Apache White Mustang, which is located in Farmington and off the Navajo Reservation. He also admitted that he had been drinking in Farmington and that he drove on State Road 371. A forensic toxicologist testified that Defendant's blood alcohol content on the day of the arrest was 0.26 grams of alcohol per 100 milliliters of blood.

**{12}** The above evidence gives rise to the reasonable inference that Defendant committed the crimes of driving while intoxicated, possessing an open container of alcohol in a motor vehicle, and failure to maintain a lane in New Mexico, off the Navajo Reservation. Further, the State presented sufficient corroborating evidence to establish the trustworthiness of Defendant's statements that he had been drinking and driving outside the Najavo Nation. We therefore conclude that sufficient evidence supported the element that "this happened in New Mexico, on non-Reservation Land, on or about the 21st day of September, 2009," as found by the jury.

**CONCLUSION**

**{13}** We affirm Defendant's convictions.

**{14}** **IT IS SO ORDERED.**

7

_____

**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

_____

**J. MILES HANISEE, Judge**