This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**CITY OF SANTA FE,**

Plaintiff-Appellee,

v.                                                                    **No. A-1-CA-35844**

**JOE DEAN,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**T. Glenn Ellington, District Judge**

Kelley Brennan, City Attorney
R. Alfred Walker, Assistant City Attorney
Santa Fe, NM

for Appellee

Ben A. Ortega
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**GALLEGOS, Judge.**

{1}     Defendant Joe Dean appeals his bench trial conviction for per se aggravated driving while intoxicated (DWI), contrary to the Santa Fe City Code (SFCC) Uniform Traffic Ordinance. *See* Santa Fe, N.M., Uniform Traffic Ordinance art. VI, § 12-6-12.1(D)(1) (2018). Defendant raises three issues on appeal: (1) the district court erred in admitting the results of his breath alcohol test; (2) there was not sufficient evidence to support his conviction; and (3) the district court erred in admitting improper expert testimony. Unpersuaded by Defendant's contentions, we affirm.

**BACKGROUND**

{2}     At approximately 12:15 a.m. on April 8, 2015, Santa Fe Police Officer Justin Apodaca observed a vehicle swerve in the roadway near the intersection of Cerrillos Road and Paseo de Peralta, one of Santa Fe's frequently patrolled main traffic arteries. As he approached the intersection, Officer Apodaca saw that Defendant and his motorcycle were down in the middle of the street. When Officer Apodaca made contact with Defendant in order to see if he was alright, Officer Apodaca noticed the smell of alcohol emanating from Defendant's body, as well as slurred speech and swaying. Officer Apodaca also observed that Defendant appeared to be steadying himself with his motorcycle. Officer Apodaca asked Defendant what was going on, to which Defendant replied, "just driving."

**{3}** In response to Officer Apodaca's subsequent request for a DWI investigation, Santa Fe Police Officer Patrick Pinson arrived on scene. Officer Pinson also observed slurred speech, swaying, and a strong odor of alcohol on the part of Defendant. Defendant told Officer Pinson that he was returning home from El Farol Restaurant on Canyon Road and that he had consumed two alcoholic drinks there between 10:15 p.m. and 12:00 a.m. Officer Pinson had Defendant perform a battery of three standardized field sobriety tests (FSTs). Defendant's performance on the FSTs and his admission to drinking alcohol, in conjunction with the officers' other observations, resulted in Defendant's arrest for DWI.

**{4}** Defendant was transported to a police substation. After the required twenty-minute observation period, Defendant provided two breath samples using an Intoxilyzer 8000. The breath test results revealed that Defendant had .23/.21 grams of alcohol per 210 liters of breath, which was above the "per se" legal limit. *See* Santa Fe, N.M., Uniform Traffic Ordinance § 12-6-12.1(D)(1) (providing that it is unlawful for a person to drive a vehicle with "an alcohol concentration of sixteen one-hundredths [.16] or more in [his or her] blood or breath").

**{5}** On December 22, 2015, Defendant was tried and convicted of per se aggravated DWI of .16 in Santa Fe Municipal Court. Defendant appealed his conviction to the district court. On August 3, 2016, Defendant was convicted of aggravated DWI

following a de novo bench trial in district court. This appeal followed. Because this is a memorandum opinion, and both parties are familiar with the facts, additional facts and procedural history will be provided throughout this opinion only as necessary.

**DISCUSSION**

{6}     Defendant raises three main issues on appeal. First, Defendant makes two distinct challenges to the admissibility of the breath alcohol test results: (1) that radio frequency interference (RFI) tests were not properly conducted; and (2) that the City failed to establish that the required proficiency testing on the Intoxilyzer 8000 was conducted. Second, Defendant challenges the sufficiency of the evidence to support his conviction for aggravated DWI. Third, Defendant contends that the district court erred in admitting improper expert testimony. We address each in turn.

**I.     Challenge to Admissibility of Breath Test Results**

{7}     The district court admitted the breath test results over Defendant's objections. We review the district court's evidentiary rulings under an abuse of discretion standard. *See State v. Martinez*, 2007-NMSC-025, ¶ 7, 141 N.M. 713, 160 P.3d 894.

{8}     In *State v. Hobbs*, 2016-NMCA-022, ¶ 1, 366 P.3d 304, we observed that the Scientific Laboratory Division of the Department of Health (SLD) has administrative authority over blood and breath tests administered to persons suspected of driving under the influence of intoxicants. *See* NMSA 1978, § 24-1-22 (2003). Under its

authority, the SLD has promulgated regulations in the form of a rule (Rule) governing "the certification of laboratories, breath alcohol instruments, operators, key operators, and operator instructors of the breath alcohol instruments as well as establish[ing] the methods of taking and analyzing samples of blood and breath testing for alcohol or other chemical substances under [NMSA 1978, § 66-8-107(B) (1993) of] the New Mexico Implied Consent Act." 7.33.2.2 NMAC. The SLD regulations governing certification of a breath alcohol test machine are "accuracy-ensuring." *Martinez*, 2007-NMSC-025, ¶ 11. Consequently, before breath alcohol test results are admitted into evidence, the State must make a "threshold showing" that the machine has been SLD-certified. *Id.* ¶ 12. This "threshold showing" is a Rule 11-104(A) NMRA foundational requirement for admission of the breath test results. *Id.* ¶¶ 9, 11-12, 23.

{9}	In *Martinez*, this foundational requirement was satisfied by the hearsay testimony of the officer who administered the breath alcohol test. *See id.* ¶ 23. The officer testified that he saw a "sticker" on the breathalyzer instrument indicating that it was SLD-certified at the time of the defendant's test. *Id.* In the present case, the City sought to make its threshold showing by introducing into evidence a copy of the certification for the Intoxilyzer 8000 used to administer Defendant's breath test.

{10}	However, *Martinez* held that "a defendant may be able to critically challenge an officer's foundational testimony concerning certification" based on information

obtained during discovery. *Id.* ¶ 24. In this case, Defendant presented the testimony of Sergeant Nicola Butler, a key operator of the machine at issue, as well as documentation obtained via subpoena from SLD with respect to RFI testing and proficiency testing on the machine. Defendant used this information to challenge the City's threshold showing that the machine was certified under the SLD regulations and to argue for the inadmissibility of the breath results.

**A.    RFI Testing**

{11}    The Rule requires that all agencies maintaining a breath alcohol instrument in a fixed location must furnish each instrument with an "adequate operational environment." 7.33.2.10(B)(2)(a) NMAC. An adequate operational environment is one that has been evaluated for RFI. *See* 7.33.2.10(B)(2)(b)(iii). Defendant argues that RFI testing is accuracy-ensuring, and thus required under *Martinez* in order to lay a proper foundation for admission of breath test results. Further, Defendant argues that the district court erred in determining that the RFI testing was properly conducted in this case. Defendant specifically contends that Sergeant Butler did not perform the tests according to SLD's instructions when he conducted an RFI evaluation of this particular machine in 2008. Defendant also faults Sergeant Butler for failing to keep a copy of the RFI printout form for the 2008 evaluation and argues that the absence of the form renders entire breath test inadmissible.

**{12}** We have not affirmatively held that the RFI evaluation procedures are accuracy-ensuring. We need not do so here in order to resolve the issue in this case, given that the district court's determination that the RFI testing was completed is supported by a preponderance of the evidence. *See State v. Willie*, 2009-NMSC-037, ¶ 12, 146 N.M. 481, 212 P.3d 369 (holding that whether a regulation relating to breath tests has been satisfied is a factual determination to be made by the trial court, which must be satisfied by a preponderance of the evidence). Defendant's Exhibit C shows that Officer Butler conducted the RFI evaluation in 2008. As we held in *Town of Taos v. Wisdom*, 2017-NMCA-066, ¶ 13, 403 P.3d 713, the Rule does not state how or how often RFI tests must be conducted. And there is nothing in the instructions provided by Defendant that indicates that control tests must be done for each type of radio, as Defendant contends, but only that three control tests must be completed.

**{13}** Notably, following the completion of the three control tests in 2008 (along with the balance of RFI tests), SLD approved the Intoxilyzer 8000's location. There is no indication that the machine was moved from the approved location. Further, Officer Butler's testimony explains that the breath test would indicate the presence of RFI, if any. The results in this case did not so indicate. Therefore, regardless of whether RFI testing is considered to be accuracy-ensuring—and therefore required for admission of breath test results—we can see no abuse of discretion on the part of the district

court either in finding that the RFI evaluation was actually completed in this case or in admitting the breath test results on that basis, even in the absence of the 2008 machine printout.

**B.    Proficiency Testing**

{14}    Defendant's second challenge to the admissibility of the breath test results is grounded in his contention that Officer Heinz De Luca, one of the machine's key operators, did not timely submit his proficiency tests. Satisfactory performance on four annual proficiency tests remains a mandatory accuracy-ensuring requirement for certification of the Intoxilyzer 8000 under the 2010 version of the Rule. *See* 7.33.2.10(B)(1)(b) NMAC; *State v. Hall*, 2016-NMCA-080, ¶ 29, 380 P.3d 884. According to Defendant's Exhibit C, key operators are instructed that when conducting a proficiency test, the solution must be analyzed within thirty days of the date mailed by SLD. SLD must then receive the proficiency test results back within ten working days of analysis.

{15}    Defendant's Exhibit C shows only the three proficiency tests submitted by Officer De Luca. In two of the three tests, Officer De Luca conducted the analysis within thirty days of mailing, but failed to return the results to SLD within ten days of the analysis. In the third tests, Officer De Luca conducted the analysis more than thirty days after the solution was mailed to him. Aside from this documentation of

Officer De Luca's purported noncompliance, however, Defendant presented no evidence to show that the four annual proficiency tests were not conducted properly by any of the other key operators of that particular Intoxilyzer 8000. In fact, Sergeant Butler, a key operator of the machine at issue, testified that he submitted his proficiency tests on time. And importantly, SLD certified the machine, indicating that the four annual proficiency tests were properly conducted. As such, the challenge to Officer De Luca's untimely submissions is, at most, essentially an attack on his key operator certification. *See* 7.33.2.12(B)(2) NMAC (stating that certified key operators shall be responsible for the "successful completion of the proficiency testing specified in this [R]ule"); *see also* 7.33.2.12(D)(2)(f) NMAC (stating that SLD may refuse to certify or may suspend or revoke the certification of any SLD-certified key operator for "failure to perform analyses and proficiency testing in a satisfactory manner as specified by SLD").

{16}     Taking into account the City's exhibit showing that the Intoxilyzer 8000 was SLD-certified at the time of Defendant's breath test, as well as Sergeant Butler's testimony that he timely submitted proficiency samples for that machine, we conclude that a preponderance of the evidence supported the district court's determination that the machine was certified. We therefore can see no abuse of discretion on the part of the district court in admitting the breath test results.

## II.    Sufficiency of the Evidence

{17}    Defendant's second argument on appeal is that there was insufficient evidence to establish that his impairment and his driving overlapped. That is, Defendant asserts that although he may have been impaired at the time he interacted with the officers, the district court engaged in impermissible speculation when it determined that he was impaired *prior* to *driving*. *See* Santa Fe, N.M., Uniform Traffic Ordinance § 12-6-12.1(D)(1) (stating that per se aggravated DWI of .16 consists of driving a vehicle in this state and having an alcohol concentration of .16 or more in the person's breath within three hours of driving the vehicle "and the alcohol concentration results from alcohol consumed before or while driving the vehicle"). The City, on the other hand, contends that there was sufficient circumstantial evidence by which the district court could have concluded that Defendant was impaired prior to driving.

{18}    On appeal, the appellate court views the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all reasonable inferences in favor of the verdict. *State v. Apodaca*, 1994-NMSC-121, ¶ 3, 118 N.M. 762, 887 P.2d 756. "[W]e will not reweigh the evidence nor substitute our judgment for that of the fact finder provided that there is sufficient evidence to support the verdict." *State v. Fuentes*, 2010-NMCA-027, ¶ 13, 147 N.M. 761, 228 P.3d 1181 (internal quotation marks and citation omitted).

10

{19} The testimony in this case reveals that neither officer witnessed Defendant driving, or crashing, his motorcycle. Additionally, it is undisputed that neither officer witnessed Defendant in "actual physical control" of the motorcycle, given that he was in the street to the side of the downed-motorcycle when first seen by Officer Apodaca. *See State v. Sims*, 2010-NMSC-027, ¶ 33, 148 N.M. 330, 236 P.3d 642 (listing non-exhaustive factors to "determine whether an individual is in actual physical control of a vehicle and has the general intent to drive so as to pose a real danger to himself, herself, or the public"). Consequently, the City directed its effort at trial toward establishing guilt based on the past impaired driving theory found in *State v. Mailman*, 2010-NMSC-036, 148 N.M. 702, 242 P.3d 269. In *Mailman*, our Supreme Court held that a driver can be guilty of DWI, even in the absence of a witness to the driving or in the absence of actual physical control, where the prosecution presents sufficient circumstantial evidence for the fact-finder to infer that the accused actually drove while intoxicated. *Id.* ¶ 28. Such circumstantial evidence "may include the accused's own admissions, the location of the vehicle next to the highway, or any other similar evidence that tends to prove that the accused drove while intoxicated." *Id.*

{20} Here, the City presented evidence through the testimony of Officers Apodaca and Pinson that Defendant was observed at approximately 12:15 a.m. next to a downed-motorcycle in the middle of the intersection of Cerrillos Road and Paseo de

Peralta, a frequently patrolled major traffic artery in Santa Fe; Defendant admitted to driving and crashing the motorcycle; Defendant stated that he was returning home from El Farol; Defendant admitted that between 10:00 p.m. and 12:00 a.m., he consumed alcohol at El Farol; and the results of Defendant's breath alcohol test was .21/.23.

{21}     Defendant counters that this case is similar to *State v. Cotton*, 2011-NMCA-096, ¶ 14, 150 N.M. 583, 263 P.3d 925, in which this Court held that the prosecution "failed to establish that [the d]efendant drove *after* he had consumed alcohol and after alcohol had impaired his ability to drive to the slightest degree." Defendant's argument rests on the fact that the officers testified that they did not question him about—or otherwise investigate—whether he drank alcoholic beverages after crashing his motorcycle. The implication of this argument is that Defendant, like the defendant in *Cotton*, could have crashed his motorcycle and then consumed alcohol. *See id.* ¶ 14 ("[The d]efendant could have parked and then consumed the [alcohol]."). Admittedly, this argument was somewhat appealing at first blush, especially given the facts provided in Defendant's brief in chief. Therein, Defendant provided this Court with no detail as to his admission to drinking, aside from a statement that he "admitted to drinking but the officers never determined when, exactly." However, based on the evidence in the record that Defendant actually admitted to drinking two alcoholic

beverages between 10:15 p.m. and 12:00 a.m. at El Farol, the location from which he was returning home on his motorcycle, it is clear to us that Defendant's vague presentation of his admission was intentionally designed to bring this case within *Cotton*'s ambit.

{22}    Given the circumstantial evidence produced by the City, we conclude that there was sufficient evidence by which the district court could infer that Defendant drove and crashed his motorcycle while impaired by the alcoholic beverages he consumed at El Farol, thus supporting Defendant's conviction for DWI based on past impaired driving.

**III.    Challenge to Admission of Allegedly Improper Expert Testimony**

{23}    Finally, Defendant challenges aspects of Officer Pinson's testimony as improperly admitted expert testimony. Defendant asserts that Officer Pinson lacked the qualifications to be an expert witness, and consequently his testimony that the FSTs are designed to detect or indicate impairment should not have been considered by the district court. In putting forth this challenge, Defendant relies on *State v. Pickett*, 2009-NMCA-077, 146 N.M. 655, 213 P.3d 805, and *State v. Marquez*, 2009-NMSC-055, 147 N.M. 386, 223 P.3d 931, *overruled on other grounds by State v. Tollardo,* 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110.

{24} As in *Pickett*, Defendant contends that Officer Pinson offered testimony regarding field sobriety tests that went beyond what a normal person would use to form an opinion about whether a driver was impaired by alcohol. Even if we were to assume that Defendant is correct in his assertion, we note that Defendant objected three times to this line of testimony, citing *Marquez*, and the district court sustained the objection each time. Crucially, this case, like *Pickett*, was tried to the bench. 2009-NMCA-077, ¶ 3. Thus, to the extent that potentially inadmissible testimony may have been placed before the district court—even though the district court ultimately sustained Defendant's objections—we "presume that the judge in a bench trial is able to properly weigh the evidence and that erroneous admission of evidence is harmless unless it appears that the judge must have relied upon the improper evidence in rendering a decision." *Id.* ¶ 21 (internal quotation marks and citation omitted); *see also Wisdom*, 2017-NMCA-066, ¶ 26 ("To the extent [the officer] wrongly testified that field sobriety tests measure impairment, we presume that the district court disregarded that testimony.").

{25} We are dealing here with a per se DWI conviction at a bench trial. Defendant was convicted for driving with a breath alcohol content over the per se aggravated DWI of .16. In rendering a decision, the district court could find Defendant guilty based on the fact that his breath alcohol content results were .23/.21, in conjunction

14

with the evidence of past impaired driving described above. Moreover, to whatever extent Defendant's performance on the FSTs may have impacted the district court's verdict, we note that the findings of fact reflect that the district court relied on its own observations of the FSTs as captured on the video recording entered into evidence by the City. Consequently, we conclude that any error resulting from the placement of testimony regarding FST "clues" and impairment before the district court was harmless because we are not convinced that the district court *must have relied* on such testimony in reaching its guilty verdict, especially where the district court thrice sustained Defendant's objections on this point.

**CONCLUSION**

{26}    The evidence presented at trial was sufficient to support Defendant's conviction for aggravated DWI. There being no reversible error, we affirm.

{27}    **IT IS SO ORDERED.**


_____
**DANIEL J. GALLEGOS, Judge**


**WE CONCUR:**


_____
**LINDA M. VANZI, Chief Judge**

15

_____

**MICHAEL E. VIGIL, Judge**