Certiorari Denied, August 29, 2011, No. 33,163

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2011-NMCA-096

Filing Date: July 18, 2011

Docket No. 30,014

STATE OF NEW MEXICO,

       Plaintiff-Appellee,

v.

JEREMY COTTON,

       Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF LEA COUNTY
Don Maddox, District Judge

Gary K. King, Attorney General
Santa Fe, NM
M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellee

Jacqueline L. Cooper, Acting Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

OPINION

CASTILLO, Chief Judge.

{1}     Defendant was in the driver's seat of a van parked on a roadside near Hobbs, New Mexico. His girlfriend and her four young children were in the car with him. Deputy Kelly had been called to the location to investigate a report of a possible domestic incident

1

occurring in the van. Suspecting that Defendant was intoxicated, Deputy Brown questioned Defendant who admitted that he had consumed alcohol recently. Defendant then failed field sobriety tests (FSTs), was arrested for DWI, refused to submit to chemical testing, and was unwilling to cooperate when he was placed in the police car after arrest. He was ultimately charged with and convicted of aggravated DWI in violation of NMSA 1978, Section 66-8-102 (2008) (amended 2010); negligent child abuse not resulting in great bodily harm or death in violation of NMSA 1978, Section 30-6-1 (2005) (amended 2009); and resisting, evading, or obstructing an officer in violation of NMSA 1978, Section 30-22-1 (1981). On appeal, Defendant's primary challenge is to the sufficiency of the evidence underlying the convictions. He argues that there was no evidence presented at trial to prove that he actually drove while impaired or that he endangered the children's lives. We agree, and we reverse these convictions. His sufficiency arguments as to resisting arrest are unpersuasive; the evidence shows Defendant vigorously resisted the deputies. We reverse in part, affirm in part, and remand for resentencing on the sole count of resisting arrest.

## DISCUSSION

**{2}**     As a preliminary matter, Defendant, for the first time on appeal, contends that the district court erred in failing to issue UJI 14-4511 NMRA that defines the term "operating" in the DWI context. Because we conclude that the evidence is insufficient to support the DWI conviction, we need not reach Defendant's argument that UJI 14-4511 was wrongly withheld. We first set out our standard of review, then turn our attention to the DWI conviction, and finally examine the other convictions.

### Standard of Review

**{3}**     "The sufficiency of the evidence is assessed against the jury instructions because they become the law of the case." *State v. Quiñones*, 2011-NMCA-018, ¶ 38, 149 N.M. 294, 248 P.3d 336. The sufficiency review itself involves a two-step process. *State v. Huber*, 2006-NMCA-087, ¶ 11, 140 N.M. 147, 140 P.3d 1096. Initially, the evidence is viewed in the light most favorable to the verdict. *Id.* The appellate court must make a legal determination of "whether the evidence viewed in this manner could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt." *State v. Apodaca*, 118 N.M. 762, 766, 887 P.2d 756, 760 (1994) (internal quotation marks and citation omitted). "[W]e will not reweigh the evidence nor substitute our judgment for that of the fact finder provided that there is sufficient evidence to support the verdict." *State v. Fuentes*, 2010-NMCA-027, ¶ 13, 147 N.M. 761, 228 P.3d 1181 (internal quotation marks and citation omitted).

### Aggravated DWI Conviction

**{4}**     We begin with a summary of the evidence presented at Defendant's trial relative to the DWI count. In October 2008, the Lea County Sheriff's Department received a report of a possible domestic incident occurring in a van parked on a roadside in Hobbs, New Mexico.

Roughly five minutes after the report was received, Deputy Brown arrived at the location where the van was parked. Deputy Sheriff Drew Buescher also responded and arrived shortly after Deputy Brown.

{5} Defendant was seated in the driver's seat of the van; Defendant's girlfriend was seated in the front passenger seat; and the four children, who were between the ages of two and nine, were seated in the rear. The van was not running, and the keys were not in the ignition. Deputy Brown detected the odor of alcohol emanating from the van and suspected that both Defendant and his girlfriend were intoxicated. Defendant's girlfriend's speech was slurred, and she was bleeding from her lip.

{6} Deputy Brown asked Defendant whether he had consumed any alcohol and Defendant responded that he had consumed twenty-four ounces of beer about one hour earlier. The deputy ordered Defendant out of the van and asked him to perform the standard FSTs. Defendant initially objected, stating that he was blind in one of his eyes, but Defendant eventually acquiesced. He failed the tests and was arrested for DWI and went to trial on these and other charges.

{7} The jury was instructed that the essential elements of aggravated DWI include the following:

1. [D]efendant operated a motor vehicle;
2. At the time [D]efendant was under the influence of intoxicating liquor; that is, as a result of drinking liquor [D]efendant was less able to the slightest degree, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to the person and the public;
3. [D]efendant refused to submit to chemical testing;
4. This happened in New Mexico, on or about the 7th day of October, 2008.

Defendant asserts that the State failed to submit sufficient evidence to prove that he operated a motor vehicle while impaired to the slightest degree and, alternatively, failed to submit sufficient evidence of impairment. We begin with the first of these two arguments.

{8} Relying on *State v. Sims*, 2010-NMSC-027, 148 N.M. 330, 236 P.3d 642, and *State v. Mailman*, 2010-NMSC-036, 148 N.M. 702, 242 P.3d 269, Defendant claims that the State failed to prove that he "intended to drive or that he had recently driven." Defendant's argument must be divided into two parts: did he intend to drive in the future or did he recently drive. As to the first scenario, the State did not try to prove that Defendant intended to drive—that he had actual physical control of the vehicle—as a basis for the conviction. The State confirms and concedes this point on appeal. The State's sole theory at trial was that there was ample circumstantial evidence that Defendant drove the van *before* he encountered Deputies Brown and Buescher and that Defendant was impaired to the slightest degree at that time. Only the *Mailman* case applies here. We explain.

**{9}** In *Sims*, our Supreme Court comprehensively reviewed the origins and applicability of the actual physical control standard and set new parameters for its applicability. *Sims* involved a driver who had lapsed into unconsciousness while sitting behind the wheel of a parked vehicle. 2010-NMSC-027, ¶ 1. When the police discovered the defendant in his vehicle, it was not running; and the keys were not in the ignition. *Id.* The metropolitan court determined that the defendant had been in actual physical control of the vehicle, so the defendant pled to one count of DWI but reserved the right to appeal the metropolitan court's determination. *Id.* ¶ 2.

**{10}** In reversing the metropolitan court, our Supreme Court turned a new page in its DWI jurisprudence and concluded that the State must prove two elements to secure a DWI conviction under the actual physical control standard: "(1) the defendant was actually, not just potentially, exercising control over the vehicle, and (2) the defendant had the general intent to drive so as to pose a real danger to himself, herself, or the public." *Id.* ¶ 4. The Court expressly recognized the consequence of these new requirements: "interpreting actual physical control to require proof of intent makes it analytically similar to an attempt crime." *Id.* ¶ 27. Applying this reformulated standard to the facts in *Sims*, the Court determined that the State failed to meet its burden. *Id.* ¶ 4. *Sims* directs that the actual physical control standard is applicable only when the prosecution is premised on prospective or anticipated impaired driving.

**{11}** In *Mailman*, as in *Sims*, the defendant was seated in the driver's seat of his parked vehicle when he was approached by an officer. *Mailman*, 2010-NMSC-036, ¶ 2. The vehicle was not running, and the keys were not in the ignition. *Id.* ¶ 5. The officer suspected that the defendant was intoxicated—there was an open beer can on the center console, and he demonstrated physical signs of impairment. *Id.* ¶ 3. The defendant confirmed the officer's suspicions by admitting that he had consumed a six pack of beer and had thrown the empty cans out of the window of his vehicle as he drove from the location he had been earlier. *Id.* ¶ 4. The defendant refused to perform field sobriety tests or take a breath test. *Id.* ¶ 5. As to the latter, he admitted that he was too drunk to pass. *Id.*

**{12}** At trial, the state argued that the defendant was guilty of DWI based on either of the following two theories: (1) the defendant was in actual physical control of the vehicle while impaired; or (2) the defendant actually drove the vehicle while impaired. *Id.* ¶ 6. The jury returned a general verdict of guilty. *Id.*

**{13}** Citing the new requirements established in *Sims*, the *Mailman* Court observed that there was insufficient evidence presented "to demonstrate that [the d]efendant had taken an overt step toward driving with a general intent to drive so as to endanger himself or the public" and held that the defendant could not have been convicted under a theory of actual physical control. *Id.* ¶ 21. The Court clarified, however, that this conclusion had no bearing on the viability of the past impaired driving theory of conviction and held that "[a]ctual physical control is not necessary to prove DWI unless there are no witnesses to the vehicle's motion and insufficient circumstantial evidence to infer that the accused actually drove while intoxicated." *Id.* ¶¶ 26, 28 (emphasis omitted). The Court determined that the evidence supported a conviction based on past impaired driving. *Id.* ¶¶ 23-24. The jury had returned

a general verdict. *Id.* ¶ 12. Because that verdict could have been reached by conviction based on actual physical control—a theory that had not been proved at trial—the Court determined that the general verdict could not stand. *Id.* The Court reversed the conviction and remanded for a new trial solely on the issue of past impaired driving. *Id.* ¶¶ 12, 28-29.

**{14}** We now turn to the present case. At Defendant's trial, the State's exclusive theory was that he drove the van *before* he encountered Deputies Brown and Buescher and was impaired to the slightest degree at that time. This matter is analogous to *Mailman*; *Sims* is inapplicable here. Thus, we need not address Defendant's contention that the State failed to prove actual physical control and need not concern ourselves with the parties' discussion of *Sims*. We need only evaluate whether there was sufficient evidence to prove the State's theory that Defendant drove before the deputies made contact with him and that he was impaired to the slightest degree at that time. The State offered the following remarks during closing argument:

> The vehicle is on the side of road. We can probably take for granted that it wasn't placed there by aliens. There's no indication that the vehicle is the home. In other words, that these people live out of this van. So, if it is on the side of the road, it got there somehow. You can infer that somebody drove it. You can also infer that the person sitting in the driver's seat was the one that brought it there. Those are called reasonable inferences from the evidence.

As proof of Defendant's impairment at the time he had driven, the State directed the jury to the following facts: the odor of alcohol emanating from the van, Defendant's admission that he had consumed twenty-four ounces of beer one hour before he encountered Deputy Brown, Defendant's poor performance on the FSTs, Defendant's belligerent and unruly behavior, and his refusal to undergo breath or blood testing. This evidence supports the conclusion that Defendant was impaired during the time of contact with the deputies. The mere fact that Defendant's van was observed at a roadside location with Defendant sitting in it in a state of intoxication, without more, does not prove Defendant drove while impaired in violation of Section 66-8-102. Indeed, there was no evidence presented to prove that the driving and impairment overlapped. No one testified about seeing Defendant driving while impaired. Although Defendant admitted he consumed alcohol one hour before speaking to Deputy Brown, there was no evidence regarding when Defendant parked the van. Defendant could have parked and then consumed the beer. The State, therefore, failed to establish that Defendant drove *after* he had consumed alcohol and after alcohol had impaired his ability to drive to the slightest degree. The State's inability to supply this needed evidence is determinative. Although the jury could infer that Defendant drove to the location where he was arrested, the jury could not infer that Defendant drove while impaired. Based on the evidence presented, any connection drawn between the drinking and driving had to result from impermissible speculation. *See State v. Vigil*, 2010-NMSC-003, ¶ 20, 147 N.M. 537, 226 P.3d 636 ("For the jury to have reached [the conclusions necessary to the verdict, it] had to speculate. This it may not do." (alteration in original) (internal quotation marks and citation omitted)).

5

**{15}** We hold that there was insufficient evidence presented to prove Defendant operated a motor vehicle while impaired to the slightest degree. As such, we conclude that Defendant's aggravated DWI conviction must be reversed. In light of this conclusion, we need not consider Defendant's alternative argument that the State failed to present sufficient evidence of impairment or his contention that the district court committed fundamental error in failing to issue UJI 14-4511. We turn to the next issue.

**Child Abuse Conviction**

**{16}** Defendant next argues that the State failed to present sufficient evidence to support the child abuse conviction. The evidence on this charge is essentially the same as the evidence presented in relation to the DWI count. The jury was instructed that in order to convict Defendant of child abuse in violation of Section 30-6-1, the State had to prove the following:

1. [Defendant] permitted four small children to be placed in a situation which endangered the life or health of the four children;
2. [D]efendant acted with reckless disregard. To find that [Defendant] acted with reckless disregard, you must find that [Defendant] knew or should have known [that his] conduct created a substantial and foreseeable risk, [D]efendant disregarded that risk and [D]efendant was wholly indifferent to the consequences of the conduct and to the welfare and safety of the four children;
3. [Defendant] was a parent, guardian or custodian of the children, or [D]efendant had accepted responsibility for the children's welfare;
4. The four children were under the age of 18;
5. This happened in New Mexico on or about the 7th day of October, 2008.

At trial, the State argued during closing that elements one and two were established by evidence that both Defendant and his girlfriend were impaired and incapable of driving and, yet, had the children in the car with them. The State did not rely on the children's proximity to the violence apparently inflicted on the mother by Defendant as evidenced by her bleeding lip. Nor did the State rely, as it did with the DWI charge, on evidence of past driving. Even if it had, we have held that there was insufficient evidence to prove that Defendant was DWI based on past driving. As to DWI based on actual physical control under *Sims*, 2010-NMSC-027, the State concedes that this theory was not raised at trial and is not "sufficiently at issue." Instead, the State's case on the child abuse count was premised on the theory that hypothetical conduct, i.e., the possibility that Defendant might drive, placed the children in a situation which endangered their lives and health. We evaluate the State's position in light of *State v. Chavez*, 2009-NMSC-035, 146 N.M. 434, 211 P.3d 891, a recent decision from our Supreme Court clarifying the applicability of Section 30-6-1.

**{17}** *Chavez* recognized that in cases of child abuse, remedies range from civil intervention by CYFD to criminal sanctions. 2009-NMSC-035, ¶¶ 12-15. "Child abuse by endangerment . . . is a special classification designed to address situations where an

6

accused's conduct exposes a child to a significant *risk* of harm, even though the child does not suffer a physical injury." *Id.* ¶ 15 (internal quotation marks and citation omitted). The *Chavez* Court rejected a literal interpretation of the statute to permit any conduct that "*may* endanger [a] child's life or heath." *Id.* ¶ 16 (alteration in original) (internal quotation marks and citation omitted). Rather, it understood the Legislature to reserve criminal prosecution of this third-degree felony for "the most serious occurrences, and not for *minor or theoretical* dangers." *Id.* (emphasis added). The Court went on to parse out what differentiated a "serious occurrence" from a "minor or theoretical danger." Looking to language derived from the uniform jury instruction for Section 30-6-1, the Court focused on the portion of the instruction directing the jury to "find that 'defendant's conduct created a *substantial and foreseeable risk*' of harm." *Chavez*, 2009-NMSC-035, ¶ 22 (quoting UJI 14-604 NMRA). The Court explained that this standard—whether the defendant's conduct created a substantial and foreseeable risk of harm—"more closely aligns with the legislative purpose that animates the child endangerment statute—to punish conduct that creates a truly significant risk of serious harm to children." *Id.*

**{18}** In this case, the State did not rely on Defendant's actual conduct, but rather on the possibility of his future conduct—conduct that did not occur because the police intervened. The State points to *State v. Graham*, 2005-NMSC-004, ¶ 10, 137 N.M. 197, 109 P.3d 285, a case in which the Court determined that there was sufficient circumstantial evidence to support an inference that the defendant had left marijuana in the living room and a marijuana bud in the baby crib, both of which were accessible to the children. The State likens the reasonable possibility that the children would come in contact with the marijuana to the reasonable possibility that Defendant would drive off thus exposing the children to the dangers of being in a car with an impaired driver. We see a difference.

**{19}** In *Graham*, the defendant acted; he left the marijuana available to the children, and marijuana is a dangerous substance as evidenced by its inclusion as a Schedule I controlled substance. *See* NMSA 1978, § 30-31-6 (C)(10) (2007); *Graham*, 2005-NMSC-004, ¶¶ 10, 12. In the case before us, Defendant had not yet acted. Any possibility of harm to the children would have to be based on Defendant's driving of the vehicle. At some point, Defendant might drive the vehicle, but there was no evidence about when or if this was going to occur. He might have decided to wait until the effects of the alcohol in his system had dissipated. Or, as happened in this case, he was arrested, and there was no opportunity to drive away.

**{20}** The other cases relied on by the State also involved acts by Defendant. *State v. McGruder*, 1997-NMSC-023, ¶ 38, 123 N.M. 302, 940 P.2d 150 (upholding child abuse conviction based on the defendant's threat to kill the child's mother with a gun when the child was standing behind her), *abrogated on other grounds by Chavez*, 2009-NMSC-035; *State v. Ungarten*, 115 N.M. 607, 609, 856 P.2d 569, 571 (Ct. App. 1993) (basing child abuse charge on the defendant's brandishing a knife at the father with the child so close that the child felt he was in danger), *abrogated on other grounds by Chavez*, 2009-NMSC-035. These cases are distinguishable because, in both cases, there was evidence that the defendant took action and that the action endangered a child.

**{21}**     The facts presented at trial were as follows:  Defendant was sitting in the driver's seat of a van parked by the side of the road; he exhibited signs of impairment; the other adult passenger in the van was impaired; there were no keys in the ignition; four children were seated in the back of the van; he was arrested and never drove the van away.   The State's theory is that the danger posed by the possibility that Defendant *might* drive while impaired exposed the children to a substantial and foreseeable risk of harm.  While we agree that driving impaired with children in the car could cause grave harm depending on the circumstances, the possibility that Defendant might drive is a theoretical danger—the exact type of danger our Legislature did not intend to bring within the ambit of Section 30-6-1.

**{22}**     We conclude that the theoretical danger to the children posed by the possibility of Defendant's impaired driving was insufficient to support Defendant's child abuse conviction. We do not mean to minimize the problem of drunken driving or the possibility of danger to the children had Defendant actually driven.  We cannot, however, conclude that the State met its evidentiary burden in this case.  We proceed to the last issue on appeal.

## Conviction for Resisting Arrest

**{23}**     Finally, Defendant contends, pursuant to *State v. Franklin*, 78 N.M. 127, 129, 428 P.2d 982, 984 (1967), and *State v. Boyer*, 103 N.M. 655, 658-59, 712 P.2d 1, 4-6 (Ct. App. 1985), that there was insufficient evidence presented that he resisted arrest. At trial, there was evidence that after Defendant was arrested, Deputies Brown and Buescher then together attempted to place him in one of their vehicles.  Defendant argued with the deputies and was unwilling to cooperate.  He was eventually persuaded to enter the vehicle, but would not put his legs inside which prevented the officers from closing the door.  Deputy Brown attempted to force Defendant's legs inside by pulling him into the vehicle, but Defendant then placed his head in a position which prevented the door from being closed.  Defendant then purposely moved in such a way that he fell out of the vehicle.  He was arguing and screaming while lying face down on the ground.  When the deputies attempted to pick him up, he kicked Deputy Buescher.  The deputies then attempted to apply leg restraints, at which time Defendant kicked Deputy Buescher again.  A third deputy was ultimately needed to secure Defendant in the vehicle.  After that was accomplished, Deputy Brown drove Defendant to a detention center.

**{24}**     The jury was instructed that the essential elements of resisting, evading, or obstructing an officer in violation of Section 30-22-1 include the following:

>        1.     [Deputy] Brown was a peace officer in the lawful discharge of duty;
>        2.     [D]efendant resisted or abused [Deputy] Brown in the lawful discharge of [his] duties;
>        3.     This happened in New Mexico, on or about the 7th day of October, 2008.

Defendant takes issue only with the evidence relating to element two.  His arguments appear to be that the evidence at trial was wrongly construed.  He claims that he was not resisting

arrest but merely attempting to speak with his girlfriend and that the officers overreacted and handled him roughly. Defendant's arguments are unavailing; he is asking us to reweigh the evidence. This we cannot do. *Fuentes*, 2010-NMCA-027, ¶ 13. There was ample evidence to demonstrate that Defendant resisted or abused Deputy Brown.

**CONCLUSION**

**{25}** We hold that the State failed to present sufficient evidence to sustain the aggravated DWI and the child abuse convictions. The Double Jeopardy Clause bars retrial on these matters, *State v. Sanchez*, 2000-NMSC-021, ¶ 30, 129 N.M. 284, 6 P.3d 486, so these charges are dismissed. However, we hold that the resisting arrest conviction is supported by sufficient evidence, and we remand this matter to the district court with instructions to resentence Defendant on that sole conviction.

**{26}   IT IS SO ORDERED.**

_____
**CELIA FOY CASTILLO, Chief Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**RODERICK T. KENNEDY, Judge**

**Topic Index for *State v. Cotton*, No. 30,014**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |
| AE-SB | Substantial or Sufficient Evidence |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-CN | Child Abuse and Neglect |
| CL-DG | Driving While Intoxicated |
| CL-RA | Resisting Arrest |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-SE | Substantial or Sufficient Evidence |