This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

 Plaintiff-Appellee,

v.                                        **No. 34,594**

**DAVID DOUGLAS,**

 Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John A. Dean Jr., District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Elizabeth Ashton, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**ZAMORA, Judge.**

{1}    Defendant David Douglas conditionally pled to trafficking methamphetamine by possession with intent to distribute, contrary to NMSA 1978, Section 30-31-20 (2006). By the conditional plea, Defendant reserved his right to appeal from the denial of his motion to suppress. On appeal, Defendant argues that the district court erred in denying his motion to suppress because: (1) the officer's pat-down search of Defendant was without reasonable suspicion that he was armed and presently dangerous, and (2) the officer lacked probable cause to arrest Defendant for resisting arrest. We conclude that there is substantial evidence to support the district court's conclusions that the officer had reasonable suspicion that Defendant was armed and presently dangerous when he conducted the pat-down search of Defendant. We also conclude there was probable cause to support the officer's arrest of Defendant for resisting arrest. We therefore affirm the district court's denial of Defendant's motion to suppress and affirm Defendant's conviction.

**BACKGROUND**

{2}    Although Defendant is not contesting the initial stop or Officer Brian Kent Johnston's authority to investigate and cite Defendant for driving a motorcycle with a suspended license and without proper registration, this portion of the interaction is nevertheless pertinent to show the progression of events leading up to the pat-down search and arrest. However, Defendant does contend that the findings of fact and

2

conclusions of law entered by the district court "confuse the chronology of events as testified to at the suppression hearing and confirmed by the dash-cam video." Based on our review of the testimony from the suppression hearing and the audio and video recordings presented at the hearing, we determine the evidence of the case to be as follows.

{3} Officer Johnston testified that on the date in question, he was working patrol and traveling west when he saw a motorcyclist, later identified as Defendant, traveling east on the same road. It appeared as if Defendant was not wearing any eye protection, so Officer Johnston made a u-turn, caught up to Defendant, tried unsuccessfully to verify whether Defendant was wearing eye protection, and simultaneously looked at the registration on the motorcycle, which was not fully visible. Because it is a violation to operate a motorcycle without eye protection or without visible registration, Officer Johnston initiated a traffic stop. He exited his patrol vehicle and while walking toward Defendant, Officer Johnston verified that the registration was expired, another traffic offense. He approached Defendant and began to explain that he stopped Defendant because he could not ascertain whether Defendant was wearing eye protection. Defendant suddenly told the officer that he should not be driving because he did not have a license. The dash-cam video from the interaction, played at the suppression hearing, made clear that Officer Johnston told Defendant he was

3

pulling him over because of the eye-protection issue, that he asked for license and registration even though Defendant was wearing eye protection at that point, and that Defendant stated that he always had his glasses on and that his license was suspended.

{4} Defendant also explained that someone else owned the motorcycle and that he did not have the registration because it was a temporary "thing." Officer Johnston asked Defendant what was in a bag that was attached to the handlebars and whether the registration might be in the bag, explaining that he was trying to save Defendant from getting a ticket. Defendant began to open the bag and Officer Johnston verified that the bag belonged to Defendant, also asking Defendant at this point if he was okay. Defendant said he was fine, but explained that he was nervous because every time he has been pulled over he has gone to jail due to his suspended license. Officer Johnston then told Defendant to dismount the motorcycle because he could not let him leave on the motorcycle without a license.

{5} Officer Johnston further testified that, once he asked Defendant to get off the vehicle, he saw a knife clipped on his pocket, and he directed him to put his hands on his head so he could remove the knife and conduct a pat-down search. Officer Johnston explained that when he sees a knife on someone there is a significant officer safety risk because the weapon could be used against him. Additionally, he noted that Defendant was abnormally nervous and that the situation was starting to escalate, and

4

Officer Johnston tried to calm Defendant down. As a result, Officer Johnston was concerned for his safety. Officer Johnston also testified that, based on his training and experience, where there is one weapon, there is another. Consequently, he proceeds with a thorough pat-down search anytime there is a possibility of a weapon, or of an individual hurting him with a weapon. He also stated that he does not stop the search as soon as he finds one weapon. When asked if there was anything else suspicious, Officer Johnston responded that when Defendant had opened the blue bag on the handlebars, based on his training and experience, he observed a corner piece of what appeared to be a digital scale.

{6}     Officer Johnston testified that once he asked Defendant to place his hands on his head, Defendant became "extremely nervous," forcing Officer Johnston to warn Defendant against touching the knife. Officer Johnston removed the knife himself, and then he attempted to conduct the pat-down search, during which time Defendant did not follow instructions, repeatedly removed his hands from the top of his head, tried to face Officer Johnston on several occasions, and asked questions about why he was being detained rather than allowing the search to proceed. Officer Johnston further testified that the pat-down search was initially conducted using the palm of his hands and that, as he began the search, Defendant's legs started shaking, which indicated extreme nervous behavior for just a pat search. Officer Johnston also testified that he

attempted to calm Defendant by asking him what was in his right back pocket (Defendant's wallet), which he thought Defendant could easily identify and which would have allowed Officer Johnston to determine that Defendant was consciously thinking. Although Officer Johnston did not remember the exact size of the knife, he testified that it was a little larger than a normal pocket knife, but it had a clip on it, indicating that it must have been a pocket knife of some kind.

{7}     As part of the pat-down search, Officer Johnston felt a bulge that he believed may be drugs in Defendant's pants pocket. Officer Johnston testified that he was not able to fully complete the officer safety pat-down search because it became clear to him that Defendant was not going to cooperate, at which time he and another officer, who was also at the scene, assisted Defendant to the ground and placed him under arrest for resisting, evading, or obstructing. Officer Johnston also testified that prior to the arrest, Defendant had not attempted to flee or threaten Officer Johnston, but that the resisting was comprised of Defendant's repeated removal of his hands from his head and repeated turning toward Officer Johnston during the attempted pat-down search, despite his repeated instructions and shouting for Defendant to comply and to keep his hands on his head.

6

**DISCUSSION**

**The Officer's Pat-Down Search of Defendant Was Supported by Reasonable Suspicion**

**{8}** Defendant first argues that the pat-down search was not supported by reasonable suspicion that he was armed and presently dangerous, thereby requiring a suppression of the evidence. "A motion to suppress evidence involves a mixed question of fact and law." *State v. Vandenberg*, 2003-NMSC-030, ¶ 17, 134 N.M. 566, 81 P.3d 19. We review the facts for substantial evidence in the light most favorable to the prevailing party. *See id.* ¶¶ 17-18. We review the law de novo. *Id.* ¶ 17. Where there may be a discrepancy in facts, we do not reweigh the facts or determine credibility, and it is for the district court to determine questions of good faith belief. *Id.* ¶ 18. Nonetheless, determining whether the officer's actions were objectively reasonable extends beyond fact-finding and is decided based on a reasonableness standard. *See id.* ¶ 19.

**{9}** Our Supreme Court extensively discussed the law regarding legal pat-down searches, pursuant to officer safety in *Vandenberg*. In *Vandenberg*, the Court stated that, "[t]o justify a frisk for weapons, an officer must have a sufficient degree of articulable suspicion that the person being frisked is both armed *and* presently dangerous." *Id.* ¶ 22. "To determine the reasonableness of a protective frisk for weapons, we must balance the threat posed to officer safety under the circumstances,

7

against the individual's right to personal security free from arbitrary interference by law officers." *Id.* ¶ 23 (internal quotation marks and citation omitted). The Court expanded:

> Although a weapons frisk must be strictly circumscribed by the exigencies that justify it, the officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent officer in the circumstances would be warranted in the belief that his safety or that of others was in danger. The purpose of a frisk for weapons is to allow an officer to conduct an investigation without fear of violence. In evaluating the reasonableness of an officer's conduct when confronted with exigent circumstances, the inquiry is an objective one into whether a reasonable, well-trained officer would have made the judgment this officer made. If reasonable people might differ, we defer to the officer's good judgment.

*Id.* (omissions, alterations, internal quotation marks, and citations omitted). An officer may reasonably believe that a defendant might be armed and dangerous during a routine traffic stop. *See id.* ¶¶ 15, 24. In order to justify a pat-down search, the officer must identify "specific behaviors and changes in the defendant's demeanor and attitude that explained why [the officer] believe[s] that the defendant might be armed and dangerous." *Id.* ¶ 25 (alterations, internal quotation marks, and citation omitted). Erratic behavior exhibited by the defendant may include "a failure to make eye contact, shaking hands, and unusual level of nervousness," as well as an elevation in such nervousness, uncontrollable shaking, and a change in tone of voice, after being asked about weapons. *Id.* (alteration, internal quotation marks, and citation omitted).

Indeed, even if the initial stop is for a mere traffic violation, "during an investigatory stop, when an officer reasonably believes the individual may be armed and dangerous, he or she may check for weapons to ensure personal safety." *Id.* ¶ 36 (emphasis, alteration, internal quotation marks, and citation omitted). With this in mind, we proceed to consider the evidence in this case.

{10}    As previously noted, Officer Johnston testified that he had Defendant dismount the motorcycle because he had no license; saw a knife clipped to Defendant's pocket; directed Defendant to put his hands on his head so he could remove the knife and conduct a pat-down search; had concerns based on the presence of the knife, including officer safety risk and the likelihood, based on his training and experience, of other weapons being present on Defendant's person; had concerns about Defendant's abnormally nervous behaviors from the initial stop; and was further concerned when Defendant became extremely nervous causing the officer to warn Defendant not to touch the knife, and when his legs started shaking upon being asked to place his hands on his head.

{11}    Based on this evidence, viewed in the light most favorable to the State as the prevailing party, we conclude that there is substantial evidence to support the district court's conclusion that "Officer Johnston had articulable safety concerns to justify a . . . pat[-]down search of Defendant based on Defendant['s possession of] a knife on

9

his person and his overall demeanor." Indeed, there is sufficient evidence to support the conclusion that Officer Johnston reasonably believed that Defendant might be armed and presently dangerous based on the presence of the knife and his observations regarding specific behaviors—abnormal nervousness—and Defendant's changes in demeanor and attitude upon being asked to submit to a pat-down search—becoming even more nervous, in part indicated by the shaking of his legs and possibly reaching for the knife by not keeping his hands on his head. *See id.* ¶¶ 17-18, 23, 25; *see also id.* ¶ 29 (discussing the officer's testimony that "very nervous people are often a threat to officer's safety because they are unpredictable"). Accordingly, we hold that the district court did not err in concluding that reasonable suspicion supported Officer Johnston's pat-down search of Defendant.

**Probable Cause Existed to Arrest Defendant for Resisting, Evading, or Obstructing an Officer**

{12}     Defendant next argues that Officer Johnston lacked probable cause to arrest Defendant for resisting arrest, thereby mandating suppression of all evidence resulting from the unlawful arrest. "Probable cause exists when the facts and circumstances warrant a belief that the accused had committed an offense, or is committing an offense." *State v. Ochoa*, 2004-NMSC-023, ¶ 9, 135 N.M. 781, 93 P.3d 1286. "[P]robable cause must be evaluated in relation to the circumstances as they would have appeared to a prudent, cautious and trained police officer." *Id.* (internal quotation

marks and citation omitted). "Whether probable cause exists is a mixed question of law and fact." *Benavidez v. Shutiva*, 2015-NMCA-065, ¶ 12, 350 P.3d 1234 (internal quotation marks and citation omitted).

**{13}** Resisting, evading, or obstructing an officer consists of, in pertinent part, "resisting or abusing any judge, magistrate or peace officer in the lawful discharge of [their] duties." NMSA 1978, § 30-22-1(D) (1981); *State v. Cotton*, 2011-NMCA-096, ¶¶ 23-24, 150 N.M. 583, 263 P.3d 925 (indicating that resisting an officer requires findings, supported by sufficient evidence, that the officer was a peace officer in the lawful discharge of his duties and that the defendant resisted the officer in such lawful discharge of his duties). Our Supreme Court has held that a defendant is not entitled to physically resist a peace officer in the lawful discharge of his duties, so long as the officer is acting within the scope of what he is employed to do. *See State v. Doe*, 1978-NMSC-072, ¶¶ 11, 14, 92 N.M. 100, 583 P.2d 464. Even if an arrest is subsequently found to be unlawful "[p]olice officers must be free to carry out their duties without being subjected to interference and physical harm." *Id.* ¶ 14.

**{14}** "[T]he statutory requirement that the victim have been a peace officer in the lawful discharge of his duties has two components: (1) whether the officer is discharging his duties, and (2) whether the officer's discharge of his duties is lawful." *State v. Phillips*, 2009-NMCA-021, ¶ 16, 145 N.M. 615, 203 P.3d 146 (internal

11

quotation marks omitted). In the present case, Officer Johnston was clearly on duty and acting in the discharge of his duties, and no argument has been made that he was acting akin to a "personal frolic of his own." *Id.* ¶ 20 (stating that "[w]here an officer is on duty, the officer's conduct must be so unrelated to the performance of his duties as to amount to a personal frolic of his own before it will be considered outside the discharge of the officer's duties" (internal quotation marks and citation omitted)).

{15}  Turning to the second component, whether Officer Johnston's discharge of his duties was lawful—i.e., whether his actions were lawful while he was conducting the pat-down search that led to Defendant's arrest—we have already held that Officer Johnston had reasonable suspicion to conduct the pat-down search of Defendant. Thus, the search itself was lawful. We therefore consider whether there was probable cause that Defendant was committing a crime, thereby justifying the arrest. *See Ochoa*, 2004-NMSC-023, ¶ 9. As set forth in detail above, the evidence shows that as Officer Johnston was conducting the pat-down search based on the presence of a weapon on Defendant's body and his extreme nervousness, Defendant failed to follow Officer Johnston's instructions by repeatedly removing his hands from the top of his head, trying to face Officer Johnston on several occasions, and asking questions about why he was being detained rather than following the officer's repeated instructions and shouts to Defendant to comply and allowing the search to proceed. Such evidence

constitutes probable cause that Defendant was resisting Officer Johnston in the lawful discharge of his duties. *See id.* ¶ 9 ("Probable cause exists when the facts and circumstances warrant a belief that the accused had committed an offense, or is committing an offense."); *Cotton*, 2011-NMCA-096, ¶¶ 23-24 (indicating that resisting an officer is comprised of a defendant resisting a peace officer in the lawful discharge of his duties). Accordingly, we hold that the district court did not err in concluding that Defendant began to resist law enforcement while Officer Johnston was in the lawful discharge of his duties and that Defendant was placed under lawful arrest.

**CONCLUSION**

{16}    For the foregoing reasons, we affirm the district court's denial of Defendant's motion to suppress and Defendant's conviction.

{17}    **IT IS SO ORDERED.**

_____

**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

_____

**HENRY M. BOHNHOFF, Judge**

13