This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                          **No. A-1-CA-35488**

**ABRAHAM BACA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY**
**Sylvia Lamar, District Judge**

Hector H. Balderas, Attorney General
John Kloss, Assistant Attorney General
Santa Fe, NM

for Appellee

Ben A. Ortega
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**VARGAS, Judge.**

{1}     Defendant Abraham Baca appeals his conviction for aggravated driving under the influence (DWI), under the impaired to the slightest degree standard, contrary to

NMSA 1978, Section 66-8-102(A), (D)(3) (2008, amended 2016). On appeal, Defendant raises two challenges. First, Defendant argues there is insufficient evidence for a conviction because the State failed to establish a nexus between Defendant's driving and impairment from alcohol consumption. Second, Defendant contends the district court erred when it declined to sanction the State for its failure to collect evidence when officers intentionally turned off their audio recording devices for approximately ten minutes during the investigation. We affirm Defendant's conviction.

## I.      BACKGROUND

{2}      At 2:10 a.m. on May 2, 2010, Sergeant Martin Trujillo, then a supervisor with the DWI Unit of the Rio Arriba County Sheriff's Office, drove up behind the vehicle driven by Defendant, which was weaving within its lane. Sergeant Trujillo followed Defendant and observed his driving behavior for approximately one minute. During that time, Defendant twice crossed the yellow center line and returned to his lane of travel. On a third occasion, Defendant crossed over the yellow center line into the oncoming traffic lane by about three-quarters the width of his vehicle and continued there for thirteen seconds until Sergeant Trujillo turned on his emergency lights and initiated the traffic stop. After Sergeant Trujillo engaged his emergency lights, Defendant continued to drive over the yellow center line for an additional seven

seconds. At the time of the stop, Sergeant Trujillo was accompanied by Deputy Jose Martinez, also with the Rio Arriba County Sheriff's Office's DWI Unit. Deputy Martinez was driving in a separate patrol vehicle behind Sergeant Trujillo and also observed Defendant's vehicle leave its lane of travel. Once Defendant had pulled over and stopped, Sergeant Trujillo approached the driver's side of the vehicle. There were two passengers in the vehicle with Defendant and Sergeant Trujillo detected the smell of alcohol coming specifically from Defendant as well as from his vehicle. Sergeant Trujillo testified that Defendant had bloodshot, watery eyes and slurred his speech. Sergeant Trujillo further observed three to four sealed alcohol containers in the vehicle. Deputy Martinez, participating as a secondary or backup officer for Sergeant Trujillo, approached the passenger side of the vehicle, but did not speak with Defendant and did not notice his smell, eyes, or speech. Deputy Martinez did, however, note that Defendant's vehicle smelled of alcohol.

{3} At the time of the stop, Defendant was employed as a New Mexico State Police officer. Sergeant Trujillo immediately recognized Defendant as a State Police officer, testifying he was "stunned" and "blown away." Upon realizing they had pulled over a State Police officer, Sergeant Trujillo testified that he and Deputy Martinez turned off their audio recording devices in order to discuss what to do. During the approximately ten-minute period that their audio recording devices were turned off,

3

there was no interruption in both officers' dash camera video recordings. While their audio recording devices were off, Sergeant Trujillo used Deputy Martinez's cell phone to contact the State Police office and request that a supervisor come to the scene. Sergeant Trujillo and Deputy Martinez then turned their audio recording devices back on. Soon thereafter, Sergeant Arcenio Chavez, a New Mexico State Police supervisor, arrived at the scene, but declined to participate in the investigation.

Sergeant Trujillo then asked Defendant to step out of the vehicle to perform field sobriety tests. Somewhere between thirty-seven and forty-eight minutes passed from the time Sergeant Trujillo first spoke to Defendant and the time Defendant exited his vehicle to perform the field sobriety tests. As Defendant stepped out of his vehicle, he held onto the door and dropped his cell phone. After Defendant was outside his vehicle, Sergeant Trujillo again detected the odor of alcohol coming from Defendant. Sergeant Trujillo administered three standardized field sobriety tests—the horizontal gaze nystagmus (HGN), the walk-and-turn test, and the one-leg stand test—as well as a finger counting test, all of which Defendant performed contrary to instructions. After Sergeant Trujillo administered the field sobriety tests, Defendant admitted to Sergeant Trujillo that he had consumed "maybe two, maybe three" beers. Deputy Martinez observed the field sobriety test portion of the investigation from approximately fifteen to twenty-five feet away and testified he did not hear Defendant admit to consuming

alcohol. Sergeant Trujillo concluded Defendant was driving while under the influence of alcohol and arrested him for DWI. At the scene, Defendant agreed to take a breath alcohol test but later refused. During an inventory search of Defendant's vehicle after the arrest, Deputy Martinez recovered opened and unopened beer cans from inside the vehicle and discovered one of the passengers in possession of an open beer. Sergeant Arcenio Chavez, of the State Police, was on scene from the beginning of the field sobriety test portion of the investigation until the time Defendant was taken into custody.

{4}     Defendant was charged with aggravated driving under the influence, a violation of Section 66-8-102(A), (D)(3), making it "unlawful for a person who is under the influence of intoxicating liquor to drive a vehicle[,]" aggravated by "refusing to submit to chemical testing[.]" Following a bench trial, the district court found Defendant guilty, and Defendant appeals.

**II.     DISCUSSION**

{5}     Defendant argues that because he was left unattended and unobserved by police in his vehicle for an extended period of time with several containers of alcohol, there is insufficient evidence to establish the nexus between his driving and impairment from alcohol consumption that is necessary for a DWI conviction. Defendant suggests he could have consumed the alcohol after being pulled over. Defendant further argues

that because of a rumored affair between himself and the spouse of Deputy Martinez, the officers acted in bad faith and treated him "differently" when they turned off their audio recording devices during the portions of the investigation they otherwise captured on video. While not completely clear, we surmise Defendant suggests that the officers coordinated their stories and conspired to arrest him for DWI to punish him for the rumored affair.

**A.    Sufficient Evidence Exists to Support Defendant's Conviction for Aggravated DWI**

**{6}**    When reviewing for sufficiency, we view the evidence in the light most favorable to the verdict, and then determine "whether the evidence viewed in this manner could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt." *State v. Trossman*, 2009-NMSC-034, ¶ 16, 146 N.M. 462, 212 P.3d 350 (internal quotation marks and citation omitted). We "indulg[e] all reasonable inferences and resolv[e] all conflicts in the evidence in favor of the verdict." *State v. Chavez*, 2009-NMSC-035, ¶ 11, 146 N.M. 434, 211 P.3d 891 (internal quotation marks and citation omitted). In reviewing for sufficiency, "[t]he reviewing court does not weigh the evidence or substitute its judgment for that of the fact finder as long as there is sufficient evidence to support the verdict." *Id.* (internal quotation marks and citation omitted).

**{7}** The test for sufficiency is "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Astorga*, 2015-NMSC-007, ¶ 57, 343 P.3d 1245 (internal quotation marks and citation omitted). "Substantial evidence is defined as that evidence which is acceptable to a reasonable mind as adequate support for a conclusion." *State v. Flores*, 2010-NMSC-002, ¶ 2, 147 N.M. 542, 226 P.3d 641 (internal quotation marks and citation omitted).

**{8}** Pursuant to Section 66-8-102, New Mexico law requires that the state prove a defendant was impaired at the time he or she drove. Under the "impaired to the slightest degree" standard, "[i]n order to convict under [Section 66-8-102(A)], a court must find that the defendant was less able to the slightest degree, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to the driver and the public as a result of drinking the liquor." *State v. Gurule*, 2011-NMCA-042, ¶ 7, 149 N.M. 599, 252 P.3d 823 (internal quotation marks and citation omitted).

**{9}** Defendant argues that, because the officers left him unattended in his vehicle for an extended period of time with several containers of alcohol while they contacted State Police and discussed how to proceed with the stop, the State is unable to prove that he did not become intoxicated after he was stopped by officers. Defendant argues

7

that "the [S]tate focused its case in chief on the results of [the] roadside sobriety tests and other observations after [Defendant] got out of his vehicle" and "never addressed the fact that they had left [Defendant] in his vehicle for well over a half an hour, and perhaps nearly a whole hour, unattended and unobserved."

{10} In this case, the State presented substantial evidence that Defendant drove while under the influence of alcohol and that his driving ability was impaired at least to the slightest degree based solely on the officers' observations of Defendant's driving and physical condition during his initial encounter with Sergeant Trujillo. That evidence included the testimony of Sergeant Trujillo and Deputy Martinez who both witnessed Defendant driving his vehicle, weaving within his lane, and crossing the yellow center line on more than one occasion, as well as Sergeant Trujillo's testimony that during his initial contact with Defendant, Defendant smelled of alcohol, had bloodshot, watery eyes, and slurred his speech.

{11} Defendant relies on *State v. Mailman*, 2010-NMSC-036, ¶ 22, 148 N.M. 702, 242 P.3d 269 and *State v. Cotton*, 2011-NMCA-096, ¶ 14, 150 N.M. 583, 263 P.3d 925 to support his argument that there is insufficient evidence to prove a nexus between his driving and impairment from alcohol consumption. In *Mailman*, our Supreme Court considered the propriety of the defendant's DWI conviction on alternative theories of actually driving while intoxicated and being in actual physical

control of a vehicle while intoxicated. 2010-NMSC-036, ¶ 1. In that case, the defendant argued that the state did not present sufficient evidence that he drove his vehicle while impaired. When police found him sitting in his car in a convenience store parking lot with an open can of beer on the center console, smelling of a strong odor of alcohol, the defendant admitted he had consumed five cans of a six-pack of beer and thrown the empty cans out the window along the highway as he drove to the convenience store. *Id.* ¶¶ 2, 24. Further, the defendant was disoriented, confused, had bloodshot, watery eyes, and had difficulty maintaining his balance. *Id.* ¶ 24. The district court found substantial evidence to support the defendant's DWI conviction for driving under the influence prior to parking at the convenience store, but remanded the matter for a new trial because the general verdict form submitted to the jury did not allow the court to ascertain which of the two theories were the basis of the defendant's conviction. *Id.* ¶¶ 24, 28.

{12}     Defendant quotes *Mailman*, pointing out that "[a]ctual physical control is not necessary to prove DWI unless there are no witnesses to the vehicle's motion *and insufficient circumstantial evidence to infer that the accused actually drove while intoxicated.*" *Id.* ¶ 28. *Mailman*, however, is of no assistance to Defendant, as there is uncontroverted evidence that Defendant was operating his vehicle in a manner that indicated he was impaired. While the officer in *Mailman* did not witness the defendant

9

driving his vehicle, Sergeant Trujillo and Deputy Martinez witnessed Defendant driving his vehicle, weaving within his lane and crossing the yellow center line, all actions that were recorded on Sergeant Trujillo's dash camera. Therefore, *Mailman's* discussion of actual physical control is irrelevant. The State has established Defendant was actually driving the vehicle, and Defendant's reliance on *Mailman's* discussion of actual physical control is misplaced.

{13}     Defendant also analogizes this case to *Cotton*, claiming Defendant could have parked and then consumed the beer. 2011-NMCA-096, ¶ 14. In *Cotton*, this Court reversed the defendant's conviction for aggravated DWI because the state provided no evidence at trial that the defendant actually drove while impaired. *Id.* ¶ 1. The defendant in *Cotton* was parked on the side of the road and was seated in the driver's seat with no keys in the ignition when the officer approached him. *Id.* ¶¶ 4-5. While the defendant admitted to having consumed alcohol one hour earlier and performed poorly on the field sobriety tests, suggesting he was impaired at the time he came into contact with the officer, there was no evidence that the defendant drove while impaired and no indication of how long the vehicle had been parked in that location. *Id.* ¶ 14. Because there was nothing linking the defendant's impairment with any prior driving, we noted in *Cotton* that "[the d]efendant could have parked and then consumed the beer." *Id.* We concluded that the state had "failed to establish that [the

10

d]efendant drove *after* he had consumed alcohol and after alcohol had impaired his ability to drive[.]" *Id.*

{14} In *Cotton*, there were no witnesses to the vehicle's motion, and there was insufficient circumstantial evidence to allow for an inference that the accused actually drove while intoxicated. *Id.* ¶ 13. *Cotton* is therefore distinguishable. Rather than happening upon Defendant in a parked car, without any idea of how long he had been there, Sergeant Trujillo and Deputy Martinez witnessed Defendant's erratic driving, prompting them to stop him. In addition, Sergeant Trujillo testified that when he initially made contact with Defendant, Defendant smelled of alcohol, had bloodshot, watery eyes, and slurred his speech. These facts taken together are sufficient to support an inference that Defendant drove while intoxicated.

**B. The District Court Did Not Err by Denying Defendant's Motion to Dismiss, to Suppress, or for Sanctions Due to the State's Failure to Collect Evidence**

{15} Finally, Defendant argues that the district court erred in failing to sanction the State by dismissing the case or awarding other sanctions when officers intentionally turned off their audio recording devices for approximately ten minutes during the investigation. Defendant characterizes the officers' actions as an intentional destruction of, or intentional failure to, collect evidence and asserts the district court should have excluded the officers' testimony, or considered the unrecorded audio

11

evidence beneficial to Defendant and presumed the officers' testimony to be unreliable pursuant to *State v. Ware*, 1994-NMSC-091, ¶ 23, 118 N.M. 319, 881 P.2d 679.

**{16}** We review the denial of a motion for sanctions for an abuse of discretion. *See State v. Duarte*, 2007-NMCA-012, ¶ 3, 140 N.M. 930, 149 P.3d 1027. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the [district] court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted). A district court also abuses its discretion when it uses an incorrect legal standard or misapplies the law. *See Brooks v. Norwest Corp.*, 2004-NMCA-134, ¶ 7, 136 N.M. 599, 103 P.3d 39. In determining whether the district court abused its discretion, "[w]e view the facts in the manner most favorable to the prevailing party and defer to the district court's findings of fact if substantial evidence exists to support those findings[,]" but we review the application of the law to the facts de novo. *State v. Hubble*, 2009-NMSC-014, ¶ 5, 146 N.M. 70, 206 P.3d 579 (internal quotation marks and citation omitted).

**{17}** Our Supreme Court has adopted a test "to determine whether the [s]tate should be sanctioned for failure to gather evidence from a crime scene" that considers both the interest of the defendant in obtaining a fair trial and the interest of the state in

engaging in effective "law enforcement, convicting guilty defendants, and revealing the truth in criminal proceedings." *Ware*, 1994-NMSC-091, ¶ 23. "First, as a threshold matter the evidence that the [s]tate failed to gather from the crime scene must be material to the defendant's defense." *Id.* ¶ 25. "If the evidence is material to the defendant's defense, then the conduct of the investigating officers is considered" to determine whether the officers acted in bad faith or were grossly negligent. *Id.* ¶ 26.

{18}     Whether evidence is material is a question of law. *See id.* ¶ 25. "Evidence is material only if there is a reasonable probability that, had the evidence been available to the defense, the result of the proceeding would have been different." *Id.* (alteration, internal quotation marks, and citations omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (internal quotation marks and citations omitted).

{19}     Defendant speculates that the officers turned off their audio recording devices to discuss the fact that Defendant was rumored to be having an affair with the wife of Deputy Martinez and to formulate a plan to retaliate against Defendant for the alleged affair. Initially, we note that Defendant's hypothesis about the content of the officers' conversation seems unlikely in light of their decision to contact a supervisor of the State Police to participate in the investigation. Presumably, if the officers intended to retaliate against Defendant, they would not have invited a supervisor from

Defendant's department to participate in the investigation. Further, Defendant's speculation was based on the perceived retaliatory motive of Deputy Martinez. However, Deputy Martinez was the nonarresting officer and, though he testified to having witnessed the erratic driving confirmed by the dash camera video, he also testified that he did not witness Defendant's physical condition—namely his bloodshot, watery eyes, slurred speech, and smell of alcohol—supporting his conviction. Deputy Martinez also testified that he didn't believe the rumors. Sergeant Trujillo, the arresting officer, testified he hadn't heard the rumors about the purported affair. Thus, we conclude Defendant has failed to demonstrate that any unrecorded conversation between Sergeant Trujillo and Deputy Martinez was material to his defense.

{20} Because Defendant has not satisfied the first prong of the *Ware* test, we need not consider the second prong concerning the culpability of the officers' conduct in turning off their audio recording devices. See *id.* ¶¶ 25-26 (stating that materiality is a "threshold matter" and that the investigating officer's conduct is considered only "[i]f the evidence is material to the defendant's defense"). Accordingly, we determine that the district court did not err by denying Defendant's motion to dismiss, to suppress, or for sanctions due to the State's alleged destruction of or failure to collect evidence.

14

## III.   CONCLUSION

{21}   We affirm Defendant's conviction.

{22}   **IT IS SO ORDERED.**

_____
**JULIE J. VARGAS, Judge**

**WE CONCUR:**

_____
**STEPHEN G. FRENCH Judge**

_____
**HENRY M. BOHNHOFF, Judge**