# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>August 8, 2017</u>

**NO. 34,855**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.

**ANTONIO ALVAREZ,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Fernando R. Macias, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John J. Woykovsky, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**VIGIL, Judge.**

{1}    Defendant Antonio Alvarez appeals his convictions for aggravated DWI, reckless driving, and possession of an open container of alcohol in a motor vehicle. On appeal, he raises three issues, challenging only his DWI and reckless driving convictions. First, he argues that his DWI conviction is unsupported by the evidence under either the theory of past driving or actual physical control. Second, Defendant argues that his conviction for reckless driving is also unsupported by sufficient evidence. Third, he argues that if this Court finds that there is sufficient evidence to support his conviction for reckless driving, it nevertheless should be vacated because his convictions for both DWI and reckless driving violate double jeopardy. The State concedes that Defendant's conviction for reckless driving is unsupported by sufficient evidence and must be vacated. Accepting the State's concession, we affirm Defendant's conviction for aggravated DWI, reverse Defendant's conviction for reckless driving, and determine that it is unnecessary to address Defendant's double jeopardy arguments.

**BACKGROUND**

{2}    On March 29, 2014, at around 11:30 p.m., Sergeant Thomas Vitale and Patrolman Cesar Duran of the New Mexico State Police both responded to a dispatch

call about a pickup truck stuck in the median on Interstate 10 where the driver was trying to back into traffic. Sergeant Vitale arrived at the scene first, around 11:35 p.m. (time stamp on dash cam as Sergeant Vitale pulls in). The vehicle was not in the originally reported location, but was a couple of miles ahead. Sergeant Vitale observed that the vehicle was stuck in the median, the vehicle appeared to be "on," and the hazard lights were on. In Sergeant Vitale's dash cam video, which was played for the jury, it appears that the truck's tires are stuck in the dirt. When Sergeant Vitale exited his patrol unit and began walking towards the vehicle, Defendant opened the driver's side door and exited from the driver's seat. Defendant was the only person in the vehicle. Sergeant Vitale testified that the keys to the vehicle were in the ignition. A check of the vehicle's license plate indicated that it belonged to Defendant.

{3}     Sergeant Vitale described Defendant's appearance as "disheveled and messy"; his shirt was untucked, his pants were unzipped, and he looked confused, as though he did not know where he was at that time. As he walked up to Defendant, Sergeant Vitale observed a strong odor of alcohol, which became stronger as Sergeant Vitale walked closer. The odor was "overwhelming" when he stood next to Defendant.

{4}     Sergeant Vitale initiated a conversation with Defendant, and testified at trial that it was "kind of hard to understand" Defendant. The following dialogue can be

2

heard in Sergeant Vitale's dash cam video. Initially, Sergeant Vitale asked Defendant how he was doing, and Defendant replied, "Alright." Sergeant Vitale asked Defendant if he had anything to drink, noting that he could smell alcohol on Defendant's breath. Although it is difficult to hear the audio, it appears that Defendant responded, "Yeah." Sergeant Vitale requested that Defendant walk over to the shoulder of the road, again inquiring if Defendant was okay. Defendant somewhat unsteadily walked to the shoulder with Sergeant Vitale.

{5} At that point, Sergeant Vitale asked Defendant, "Where were you coming from; where were you driving from? Do you understand English?" Defendant replied, "A little. Coming from Albuquerque." Sergeant Vitale again asked, "Coming from Albuquerque?"; Defendant replied in the affirmative. Sergeant Vitale then inquired, "Where were you headed to?" Defendant answered, "Going to El Paso." Sergeant Vitale asked Defendant if he had anything to drink, and Defendant answered in the negative. Sergeant Vitale asked Defendant if he would be willing to take field sobriety tests, and although Sergeant Vitale testified that it was difficult for him to understand Defendant, and also difficult for Defendant to understand him, Defendant agreed to take the tests. Based on Defendant's performance on the field sobriety tests, Sergeant Vitale arrested him for DWI. A blood draw was performed, and Defendant's blood alcohol concentration was determined to be 0.25 grams of ethanol per one

hundred milliliters of blood.

{6} Patrolman Duran testified that he responded to the same dispatch call as Sergeant Vitale, and that Sergeant Vitale was already speaking with Defendant when he arrived at the scene a few minutes after Sergeant Vitale. Patrolman Duran asked Defendant in Spanish if he could understand or speak English; Defendant stated that he could understand English, and Patrolman Duran determined that translation to Spanish was not necessary. Patrolman Duran observed Defendant to have slurred speech, odor of alcohol, bloodshot eyes, and to be very unsteady on his feet. Patrolman Duran stood by for safety as Defendant was arrested, and he saw a 25-ounce open can of Budweiser on the passenger floor of the vehicle. Patrolman Duran could not recall if it was full or had spilled, and no fingerprints were taken from the can. He also did not remember if the vehicle's engine was running or if he took the keys from the ignition.

{7} During the State's closing argument, the prosecutor asked the jury to find Defendant guilty of aggravated DWI on the theory of past driving, arguing specifically that the evidence showed that Defendant actually drove because he told Sergeant Vitale that he was coming from Albuquerque and going to El Paso, and his vehicle was stuck in the median on the interstate between those two locations. The prosecutor specifically argued that the State was not asking the jury to find that

4

Defendant was guilty under the actual physical control theory, but only under the theory of past driving. Defendant's closing argument asked the jury to consider the actual physical control alternative.

{8} Ultimately, the jury convicted Defendant by a general verdict of DWI, based on a jury instruction that defined the operation of a motor vehicle as one of two alternatives: either actually driving the motor vehicle (past driving) or being in actual physical control of the vehicle with intent to drive the vehicle. *See* UJI 14-4511 NMRA. Based on the jury instruction setting forth both alternatives, the jury could have relied on either past driving or actual physical control as the basis for its conviction, and the jury was not required to specify which theory it relied upon in reaching its verdict. On appeal, Defendant raises no argument to suggest that one of these bases should not be considered due to the arguments made at trial. *See State v. Fox*, 2017-NMCA-029, ¶ 8, 390 P.3d 230 ("The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." (internal quotation marks and citation omitted)), *cert. granted*, 2017-NMCERT-___ (No. 36269, Feb. 14, 2017).

**DISCUSSION**

**Aggravated DWI**

**Past Driving**

{9}	We turn first to Defendant's argument that insufficient evidence exists to uphold Defendant's conviction for aggravated DWI on the theory that Defendant actually drove the vehicle. Because Defendant does not challenge the element of intoxication, we limit our discussion to the contested question of whether Defendant operated the vehicle.

{10}	"The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). The reviewing court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

{11}	In support of his contention that there was insufficient evidence presented of

6

past driving, Defendant argues that his statement to Sergeant Vitale that he was "coming from Albuquerque" and "going to El Paso" was not an admission that he was driving, but merely a statement of where he was coming from and where he was headed. Defendant further argues that there were no witnesses who personally observed Defendant driving, it was unclear how long the vehicle had been parked on the road, and it was also not known whether another person had been driving the vehicle before police approached.

{12}    The State contends that sufficient circumstantial evidence was presented to support an inference that Defendant had actually driven the vehicle. We agree. *See*, *e.g.*, *State v. Mailman*, 2010-NMSC-036, ¶¶ 23, 27-28, 148 N.M. 702, 242 P.3d 269 (observing that direct evidence is not required to support a conviction for past DWI; rather, circumstantial evidence may be relied upon to establish that the accused actually drove while intoxicated).

{13}    In the present case, Sergeant Vitale reached Defendant's vehicle about five minutes after receiving a dispatch call alerting him that there was a pickup truck stuck in the median that was trying to back into traffic. Sergeant Vitale confirmed that the truck was actually stuck in the median. Sergeant Vitale observed that the vehicle was stuck in the median, the vehicle appeared to be on, and the hazard lights were on. Defendant was alone, and Sergeant Vitale witnessed Defendant exit from the driver's

seat. No evidence was presented that there was any other occupant in the vehicle. Although Defendant argues that his statements to Sergeant Vitale that he was coming from Albuquerque should not be interpreted as an admission to driving, we disagree. Sergeant Vitale asked Defendant where he was coming from in two Defendant phrased ways: "Where were you coming from; where were you driving from?" Defendant replied that he was coming from Albuquerque, and he never suggested that Sergeant Vitale's assumption that he was driving was incorrect.

{14} We conclude, based on our case law, that this constitutes sufficient circumstantial evidence to uphold a conviction based on past driving. *See Mailman*, 2010-NMSC-036, ¶¶ 2-4, 23-24 (observing that there was sufficient circumstantial evidence to support a DWI conviction under a theory of past driving, based on the defendant's presence behind the wheel of a vehicle parked by itself in a dark area of a convenience store parking lot, along with admissions to having driven to the convenience store and having consumed alcohol while driving); *cf. State v. Owelicio*, 2011-NMCA-091, ¶ 33, 150 N.M. 528, 263 P.3d 305 (concluding that sufficient evidence was presented to support a finding that the defendant operated a vehicle as part of her DWI conviction based on the defendant's admission that she was driving, the fact that the defendant and a third party who denied driving were the only persons at the scene, and a videotape showing the defendant approaching the passenger side

8

of the vehicle).

{15} We acknowledge Defendant's efforts to analogize the facts of this case to those in *State v. Cotton*, 2011-NMCA-096, 150 N.M. 583, 263 P.3d 925. In *Cotton*, this Court held that there was insufficient evidence to support a conviction where there was nothing from which the jury could infer that the defendant had driven after he had consumed alcohol and after his ability to drive had become impaired. *Id.* ¶¶ 14-15. In that case, police responded to a call about a possible domestic incident in a van parked on the side of the road; the van was not running; the keys were not in the ignition; and the defendant admitted to drinking one hour prior to contact with police. *Id.* ¶¶ 4-6. The determinative factor in *Cotton*, however, was the lack of evidence presented as to timing of the driving. This Court held that although it would have been reasonable for the jury to conclude that the defendant drove to the place where he was arrested, there was insufficient evidence for the jury to conclude that the defendant had been impaired by alcohol prior to doing so. *Id.* ¶ 14-15.

{16} The facts of the present case are distinguishable from *Cotton*. Notably, the dispatch call reported that someone observed the truck stuck in the median trying to pull back into traffic, and only five minutes later, Sergeant Vitale arrived at the scene. The jury could reasonably have inferred that a five-minute lapse was not enough time for Defendant to have consumed enough alcohol to result in impairment.

9

Additionally, unlike the vehicle in *Cotton*, Defendant's truck was stuck in the median, with the hazard lights on, suggesting that he did not intentionally park the vehicle there; taken together with the fact that a dispatch call was made about the truck, the jury could have reasonably inferred that Defendant recently drove the truck into the median. *See State v. Garcia*, 2005-NMSC-017, ¶ 20, 138 N.M. 1, 116 P.3d 72 (permitting a jury to draw reasonable inferences from the evidence to reach a verdict). We therefore conclude that the State presented sufficient evidence to support a conviction for DWI based on past driving.

**Actual Physical Control**

{17} Because we have concluded that there was sufficient evidence presented to uphold Defendant's DWI conviction based on past driving, we need not consider whether the State presented sufficient evidence to uphold his conviction under the theory of actual physical control. *See State v. Olguin*, 1995-NMSC-077, ¶ 2, 120 N.M. 740, 906 P.2d 731 (holding that due process does not require a general verdict of guilt to be set aside if one of the two alternative bases for conviction is supported by sufficient evidence and the other basis is not legally inadequate); *see also Mailman*, 2010-NMSC-036, ¶ 28 ("Actual physical control is not necessary to prove DWI unless there are no witnesses to the vehicle's motion and insufficient circumstantial evidence to infer that the accused actually drove while intoxicated.

Such evidence may include the accused's own admissions, the location of the vehicle next to the highway, or any other similar evidence that tends to prove that the accused drove while intoxicated."). Nevertheless, we proceed to address Defendant's arguments regarding the sufficiency of the evidence under the theory of actual physical control.

{18}     Under a theory of actual physical control, the State must prove "(1) the defendant was actually, not just potentially, exercising control over the vehicle, and (2) the defendant had the general intent to drive so as to pose a real danger to himself, herself, or the public." *State v. Sims*, 2010-NMSC-027, ¶ 4, 148 N.M. 330, 236 P.3d 642. *Sims* addressed a situation wherein a defendant was found passed out or asleep behind the wheel of his car parked in a commercial parking lot. *Id.* ¶ 1. Our Supreme Court explained in *Sims* that "we do not believe that the Legislature intended to forbid intoxicated individuals from merely entering their vehicles as passive occupants or using their vehicles for temporary shelter." *Id.* ¶ 3. Ultimately, our Supreme Court concluded that "the [s]tate failed to prove that [the d]efendant used the vehicle other than as a passive occupant[, and i]t was pure speculation whether [the d]efendant would rouse himself and drive the vehicle." *Id.* ¶ 4.

{19}     There are fourteen factors for the jury to consider when determining whether a defendant is in actual physical control of a vehicle: whether the vehicle was

running; whether the ignition was on; where the ignition key was located; where and in what position the driver was found in the vehicle; whether the person was awake or asleep; whether the vehicle's headlights were on; where the vehicle was stopped; whether the driver had voluntarily pulled off the road; time of day; weather conditions; whether the heater or air conditioner was on; whether the windows were up or down; whether the vehicle was operable; and any explanation of the circumstances shown by the evidence. UJI 14-4512 NMRA; *see Sims*, 2010-NMSC-027, ¶ 33; *Mailman*, 2010-NMSC-036, ¶ 20.

{20} Applying these factors, we conclude that sufficient evidence was presented to establish actual physical control under *Sims* and *Mailman*. Defendant was in the driver's seat of the truck, which was stuck in the median on the interstate with the hazard lights on, suggesting that Defendant knew that the car should not have been there, and that he drove into the median inadvertently. It was around 11:30 p.m., and the weather was clear and warm. Neither officer who testified could recall specifically whether the truck's engine was running, but Sergeant Vitale testified that the vehicle appeared to be "on," indicating the ignition was turned on. Sergeant Vitale also testified that the key was in the ignition. While Defendant argues that his disheveled appearance suggests that he was asleep in the vehicle, the State argues that the fact that he opened the driver's door and exited as soon as Sergeant Vitale approached

12

suggests that Defendant was awake. We agree with the State that the jury could have inferred that Defendant's rapid exit from the vehicle suggested that he was awake. *See Cunningham*, 2000-NMSC-009, ¶ 26 (explaining that our standard of review requires us to indulge all inferences in favor of the guilty verdict).

{21} Defendant argues that he could not have been in actual physical control of the vehicle because his truck was stuck in the dirt. Although the evidence was that the vehicle's tires were stuck in the median, it was not apparent that the vehicle was entirely inoperable, and it could reasonably be inferred that Defendant could have moved the vehicle out of the median, either by himself or with assistance; he expressed an intent to go somewhere, as he told Sergeant Vitale that he was "going to El Paso." This distinguishes the present case from *Mailman*, wherein the defendant told the police officer who stopped him that his car had broken down and asked the officer to arrange for a tow truck. 2010-NMSC-036, ¶ 5. The officer in *Mailman* looked for but could not find the keys to the car, and was unable to start the car without a key, leading him to conclude that the vehicle was inoperable. *Id.* Our Supreme Court held that on its own, evidence that a defendant "was in a non-moving, inoperable vehicle attempting to make a phone call[,]" that he told the officer that his car broke down, and that he asked the officer to help him arrange a tow, was insufficient as a matter of law to prove actual physical control. *Id.* ¶ 21. In so holding,

13

our Supreme Court explained that "[w]hile the operability of the vehicle may be highly relevant to [the] determination [of actual physical control], it is not necessarilydispositive." *Id.* ¶ 19. Unlike the situation in *Mailman*, there was no evidence in this case to suggest that Defendant's truck could not have been moved from the median.

{22} In sum, considering the totality of the evidence, we conclude that Defendant was more than a passive occupant of the truck, and that sufficient evidence was presented to support the conviction under the theory of actual physical control. Having concluded that there was sufficient evidence to establish that Defendant operated the vehicle either under the theory of past driving or actual physical control, we affirm Defendant's conviction for aggravated DWI.

**Reckless Driving**

{23} Finally, we turn to Defendant's contention that his reckless driving conviction must be vacated. The State concedes this issue, acknowledging that "there was admittedly no evidence of reckless driving beyond [Defendant's] intoxication." The State further notes that "[w]hile the jury could reasonably infer that [Defendant] had driven off the highway into the median, this in itself does not establish reckless driving, because without witness testimony or an admission from [Defendant], the jury could only speculate as to why he did so."

14

{24}     While we are not bound to accept the State's concession, *see State v. Tapia*, 2015-NMCA-048, ¶ 18, 347 P.3D 738 (stating appellate courts are not bound by the state's concessions), we agree that the reckless driving conviction should be vacated. *See State v. Sandoval*, 1975-NMCA-096, ¶ 2, 88 N.M. 267, 539 P.2d 1029 ("The rule in criminal cases in New Mexico is that evidence of intoxication is but a circumstance to be considered by the jury in deciding the issue of reckless driving.").

{25}     Because we reverse Defendant's conviction for reckless driving, we do not address Defendant's argument that his convictions for both aggravated DWI and reckless driving violate double jeopardy. *See State v. Trujillo*, 2012-NMCA-112, ¶ 44, 289 P.3d 238 ("Because we reverse the kidnapping conviction, there is no need to address [the d]efendant's double jeopardy arguments regarding kidnapping.").

**CONCLUSION**

{26}     For the foregoing reasons, we affirm Defendant's conviction for aggravated DWI and reverse his conviction for reckless driving. We therefore remand to the district court to vacate Defendant's conviction for reckless driving and resentence Defendant accordingly.

{27}     **IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Judge**

15

**WE CONCUR:**

_____
**J. MILES HANISEE, Judge**


_____
**STEPHEN G. FRENCH, Judge**